POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Lead Plaintiff*
*[additional counsel listed in signature block]*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE GOLDEN HEAVEN GROUP HOLDINGS LTD. SECURITIES LITIGATION<br><br>THIS DOCUMENT RELATES TO *ALL ACTIONS* | Case No.: 2:23-cv-10619-HDV-SK<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO GOLDEN HEAVEN GROUP HOLDINGS LTD., COGENCY GLOBAL, INC., COLLEEN DEVRIES, AND R.F. LAFFERTY & CO.'S MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Hearing Date: January 30, 2025<br>Time:          10:00 AM<br>Courtroom:   5B<br>Judge:        Hon. Hernán D. Vera |

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ........................................................................1

II.   STATEMENT OF FACTS ..............................................................................2

      A.    China-Based Amusement Park Company, Golden Heaven, Solicits U.S. Markets In IPO. ...........................................................................2

      B.    Golden Heaven Misrepresented The Quality And Condition Of Its Parks' Rides And Attractions And The Number Of Park Guests. .............3

      C.    The Truth Emerges. ..............................................................................5

III.  ARGUMENT ................................................................................................6

      A.    The AC Pleads Violations Of The Exchange Act. ..................................6

            1)    The AC Pleads Actionable Misstatements And Omissions About Golden Heaven's Business. ....................................................6

                  a)    Statements About Golden Heaven's Parks' Quality, Condition, And Personnel Were False When Made And Omitted Material Information. ............................................7

                  b)    Statements About Golden Heaven's Park Attendance And Revenue Were False And Misleading And Omitted Material Information. .........................................................11

                  c)    These Statements Are Actionable. ......................................15

            2)    The AC Raises A Strong Inference Of Scienter. ...........................19

      B.    The AC Pleads Violations Of The Securities Act. .................................23

            1)    Rule 9(b) Does Not Apply To Claims Under The Securities Act. ....................................................................................24

            2)    The AC Pleads Actionable False Statements And Omissions. ........25

            3)    The AC Adequately Pleads Violations Of Items 105 And 303. ......26

            4)    The AC Adequately Alleges Plaintiff's Section 11 Standing. .........26

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO GOLDEN HEAVEN GROUP HOLDINGS LTD., COGENCY GLOBAL, INC., COLLEEN DEVRIES, AND R.F. LAFFERTY & CO.'S MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT

IV.    CONCLUSION.............................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abramson v. Newlink Genetics Corp.*,
965 F.3d 165 (2d Cir. 2020) ........................................................................16

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008) ..........................................................................6

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
2020 WL 4569846 (N.D. Cal. Aug. 7, 2020) ..................................................9

*Brady v. Delta Energy & Commc'ns Inc.*,
598 F. Supp. 3d 865 (C.D. Cal. 2022) ............................................................8

*Brown v. Papa Murphy's Holdings Inc.*,
2021 WL 235865 (W.D. Wash. Jan. 12, 2021) .............................................13

*Cisneros v. Allianz Life Ins. of N. Am.*,
2019 WL 9656383 (N.D. Cal. Dec. 2, 2019).................................................28

*E. Öhman J:or Fonder AB v. NVIDIA Corp.*,
81 F. 4th 918 (9th Cir. 2023) ..........................................................................6

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
63 F.4th 747 (9th Cir. 2023) .........................................................................17

*Hammer v. Frontier Fin. Corp.*,
2011 WL 13229260 (W.D. Wash. Sept. 7, 2011) .........................................18

*Herman & MacLean v. Huddleston*,
459 U.S. 375 (1983).......................................................................................23

*Hildes v. Arthur Andersen LLP*,
734 F.3d 854 (9th Cir. 2013) ........................................................................23

*Howard v. Everex Sys., Inc.*,
228 F.3d 1057 (9th Cir. 2000) ......................................................................20

*In re Arrowhead Rsch. Corp. Sec. Litig.*,
2016 WL 6681180 (C.D. Cal. Aug. 18, 2016), *aff'd*, 711 F.App'x 434 (9th Cir. 2018) ................................................................................................................21

*In re Century Aluminum Co. Sec. Litig.*,
729 F.3d 1104 (9th Cir. 2013) ................................................................................27

*In re ChinaCast Educ. Corp. Sec. Litig.*,
809 F.3d 471 (9th Cir. 2015) ..................................................................................23

*In re Countrywide*,
588 F. Supp. 2d 1132 (C.D. Cal. 2008) ............................................................16, 24

*In re Cutera Sec. Litig.*,
610 F.3d 1103 (9th Cir. 2010) ................................................................................17

*In re Harman Int'l Indus., Inc. Sec. Litig.*,
791 F.3d 90 (D.C. Cir. 2015).................................................................................17

*In re Immune Response Sec. Litig.*,
375 F. Supp. 2d 983 (S.D. Cal. 2005).....................................................................21

*In re Intuitive Surg. Sec. Litig.*,
65 F. Supp. 3d 821 (N.D. Cal. 2014)........................................................................9

*In re Intuitive Surgical Sec. Litig.*,
65 F. Supp. 3d at 834–35 (N.D. Cal. 2014)............................................................18

*In re ITT Educ. Servs., Sec. Litig.*,
34 F. Supp. 3d 298 (S.D.N.Y. 2014) ......................................................................23

*In re Mun. Mortg. & Eq., LLC, Sec. & Derivative Litig.*,
876 F. Supp. 2d 616 (D. Md. 2012)........................................................................28

*In re Network Assocs., Inc., Sec. Litig.*,
2000 WL 33376577 (N.D. Cal. Sept. 5, 2000).......................................................19

*In re New Century*,
588 F. Supp. 2d 1206 (C.D. Cal. 2008) ..................................................................18

*In re Quality Sys., Inc. Sec. Litig.*,
865 F.3d 1130 (9th Cir. 2017) ..........................................................................13, 15

*In re Refco, Inc. Sec. Litig.*,
    503 F. Supp. 2d 611 (S.D.N.Y. 2007) ........................................................................25

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
    351 F. Supp. 2d (D. Md. 2004)..................................................................................28

*In re SeeBeyond Techs. Corp. Sec. Litig.*,
    266 F. Supp. 2d 1150 (C.D. Cal. 2003) ....................................................................27

*In re STEC Inc. Sec. Litig.*,
    2011 WL 2669217 (C.D. Cal. June 17, 2011) ............................................................6

*In re Suprema Specialties, Inc. Sec. Litig.*,
    438 F.3d 256 (3d Cir. 2006) ......................................................................................24

*In re Vivendi, S.A. Sec. Litig.*,
    838 F.3d 223 (2d Cir. 2016) ........................................................................................8

*In re WageWorks, Inc., Sec. Litig.*,
    2020 WL 2896547 (N.D. Cal. June 1, 2020)..............................................................23

*In re Wells Fargo Sec. Litig.*,
    12 F.3d 922 (9th Cir. 1993) .......................................................................................10

*Jui-Yang Hong v. Extreme Networks*,
    2017 WL 1508991 (N.D. Cal. Apr. 27, 2017).............................................................18

*Karri v. Oclaro, Inc.*,
    2020 WL 5982097 (N.D. Cal. Oct. 8, 2020) ..............................................................15

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) .................................................................................6, 17

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
    601 U.S. 257 (2024)..................................................................................................26

*Maiman v. Talbott*,
    2010 WL 11421950 (C.D. Cal. Aug. 9, 2010) .............................................................7

*N.M. State Inv. Council v. Ernst & Young LLP*,
    641 F.3d 1089 (9th Cir. 2011) .............................................................................22, 23

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000) ...............................................................................20

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
575 U.S. 175 (2015)............................................................................................16

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
774 F.3d 598 (9th Cir. 2014) .............................................................................21

*Panther Partners Inc. v. Jianpu Tech. Inc.*,
2020 WL 5757628 (S.D.N.Y. Sept. 27, 2020) ..................................................26

*Ret. Assn. v. comScore*,
268 F. Supp. 3d (S.D.N.Y. 2017) .......................................................................24

*Rieckborn v. Jefferies LLC*,
81 F. Supp. 3d 902 (N.D. Cal. 2015)..................................................................25

*Rubke v. Capitol Bancorp Ltd*,
551 F. 3d 1156 (9th Cir. 2009) ..........................................................................26

*S. Ferry LP, No. 2 v. Killinger*,
542 F.3d (9th Cir. 2008) .....................................................................................20

*S.E.C. v. Lee*,
720 F. Supp. 2d 305 (S.D.N.Y. 2010) ...............................................................22

*Scheller v. Nutanix*,
2020 WL 5500422 (N.D. Cal. Sept. 11, 2020)..................................................12

*Schueneman v. Arena Pharms., Inc.*,
840 F.3d 698 (9th Cir. 2016) ....................................................................8, 10, 19

*Scott v. ZST Digit. Networks, Inc.*,
896 F. Supp. 2d 877 (C.D. Cal 2012) ................................................................21

*Shields v. Citytrust Bancorp, In*c.,
25 F.3d 1124 (2d Cir. 1994) ...............................................................................22

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007)............................................................................................19

*Venkataraman v. Kandi Techs. Grp., Inc.*,
    2022 WL 4225562 (S.D.N.Y. Sept. 13, 2022) ........................................................14

*Washtenaw Cty. Emps. Ret. Sys. v. Avid Tech., Inc*.,
    28 F. Supp. 3d 93 (D. Mass. 2014) ........................................................................23

*Weston v. DocuSign, Inc*.,
    669 F.Supp.3d 849 (N.D. Cal. 2023) ....................................................................18

*Weston v. Twitter, Inc*.,
    29 F.4th 611 (9th Cir. 2022) ...................................................................................9

*Zucco Partners, LLC v. Digimarc Corp*.,
    552 F.3d 981 (9th Cir. 2009) .................................................................................21

**Statutes**

15 U.S.C. §77k ...........................................................................................*passim*

15 U.S.C. § 77o...............................................................................................23

**Rules**

Fed. R. Civ. P. 8 .........................................................................................25, 28

Fed. R. Civ. P. 9 .........................................................................................24, 25

## I.    PRELIMINARY STATEMENT[1]

In its April 2023 IPO and after, China-based amusement park company Golden Heaven Group Holdings Ltd. ("Golden Heaven" or the "Company") lauded the array of the "quality" and "innovat[ive]" rides and attractions drawing droves of guests *in the millions* for the three years of its operation—thus providing robust revenue in the *tens of millions*—and assured U.S. investors that these numbers would only go up as China's COVID-era policies ended.  But the truth revealed that these representations were a classic "China hustle"; in reality, the parks were ill-maintained "dystopian hellscapes," attracting a small fraction of their reported capacity—and for some, no visitors at all.

Defendants' cursory objections to the AC's well plead allegations have no merit. Notably, while protesting the falsity of these statements, Defendants do *not* contend that Golden Heaven's rides and attractions are, or ever were, in good quality.  Defendants instead ask this Court to disregard the findings of two investigative teams to the contrary and rule as a matter of law that those statements are inactionable.  Defendants also ask this Court to jettison common sense by claiming the parks' inflated guest numbers— which represent that the parks were drawing in guests at *double* the parks' daily

---

[1] "AC" refers to Plaintiff's Class Action Complaint (DE 55). "MTD" refers to the Memorandum of Points and Authorities in Support of Defendant Golden Heaven Group Holdings Ltd.'s Motion to Dismiss the Amended Complaint (DE 77-1). Unless otherwise indicated, all emphasis is added, and all citations and internal quotation marks are omitted.

PLAINTIFF'S OPPOSITION TO THE GOLDEN HEAVEN GROUP HOLDINGS LTD., COGENCY GLOBAL, INC., COLLEEN DEVRIES, AND R.F. LAFFERTY & CO.'S MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT

maximum capacity—were accurate, despite the investigators' findings that the parks were in decay and abandoned.  Tellingly, if these numbers were accurate, presumably the parks would need sufficient personnel to match this demand, yet Defendants never address the AC's allegations that—despite Golden Heaven's statements to the contrary—almost no employees manage, operate, or maintain these rides.

Defendants also do not address any of the AC's scienter allegations, most likely because the AC makes clear that Golden Heaven's management knew of, and benefitted from, these misrepresentations, and—as market analysts reported when the truth was revealed—such "China-based scams," "lur[e] in unsuspecting U.S. retail investors" only to "exit[] through the kind of 'rug pull' decline we are seeing with Golden Heaven."  Defendants' motions must be denied.

## II.    STATEMENT OF FACTS

### A. China-Based Amusement Park Company, Golden Heaven, Solicits U.S. Markets In IPO.

Founded in 2020 and headquartered in China, Golden Heaven is a Cayman Islands holding company that "manages and operates" six amusement parks in southern China. AC¶¶23-24.  Golden Heaven generates its revenue solely from those six amusement parks, and guest attendance at those parks accounts for over 90% of that revenue. AC¶¶25, 33.

PLAINTIFF'S OPPOSITION TO THE GOLDEN HEAVEN GROUP HOLDINGS LTD., COGENCY GLOBAL, INC., COLLEEN DEVRIES, AND R.F. LAFFERTY & CO.'S MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT

2

In 2023, Golden Heaven set its sights on the U.S. markets for an influx of cash in an upcoming April 2023 IPO valued at $200 million USD.  AC¶¶22-38.  In the Offering Documents, Golden Heaven boasted about and the "quality" of its "innovative" rides and attractions drawing those guests (AC¶¶34, 37-38), and assured the market about the safety and condition of the rides and attractions (AC¶35), as well as the robust team of employees ensuring the continued quality of those attractions and guest experience (AC¶36).

Golden Heaven also promoted the strong numbers of park guests and revenue. AC¶32. For the fiscal years ending in September 2021 and 2022 respectively, "the number of guest visits at the parks totaled approximately 2.40 million and 2.41," and "revenue … remained largely stable over the years," accruing $38,517,742 [in 2021] and $41,788,19 [in 2022]."  AC¶33, 32 (chart).  In the few months after the IPO, apparently upon further assurances of similar numbers and growth, AC¶¶37-38, Golden Heaven's stock surged a striking 320% from the IPO price, AC¶38.

**B. Golden Heaven Misrepresented The Quality And Condition Of Its Parks' Rides And Attractions And The Number Of Park Guests.**

Unknown to U.S. investors, Golden Heaven misrepresented every key aspect of the Company's business.  While the Company repeatedly praised the quality and condition of its attractions and maintenance (*e.g*., AC¶¶34-37, 57-100), in both November 2023

PLAINTIFF'S OPPOSITION TO THE GOLDEN HEAVEN GROUP HOLDINGS LTD., COGENCY GLOBAL, INC., COLLEEN DEVRIES, AND R.F. LAFFERTY & CO.'S MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT

and June 2024, two different investigative teams visited each park and discovered the truth—that the parks were either nearly or completely deserted, resembled "dystopian hellscapes," and that the attractions were in various states of disrepair, *e.g.*, AC¶¶39-40, 101-45. Moreover, they found close to *no* employees were managing or operating these rides, nor maintaining them, *e.g.*, AC¶¶40, 55, 141, 144, and, based on data from China's social endowment office, Golden Heaven also affirmatively misrepresented the number of employees hired by *as much as 367%*, AC¶77. Given this reality, it is not surprising that Golden Heaven also misrepresented the number of park guests. The reported attendance numbers, when divided by 365 day per year, *exceed the daily maximum park capacity by more than double*. *E.g.*, AC¶¶39, 58-67. And, while the IPO valued Golden Heaven at $200 million dollars, a related entity controlled by Defendant Jin had sold all six parks to the Company for only $7.5 million a year earlier. AC¶41. Thus, the Company filed an IPO for the same six parks valued at over $200 million—*twenty-seven times* more than what these parks were valued at only a year ago.

Unfortunately, there were no gatekeepers to correct this fraud. Then-CEO and 30% shareholder, Defendant Jin, had "a history of undisclosed fraud allegations and asset freezes in China," the Company "was taken public by securities firms with multiple FINRA infractions" including the Underwriter Defendant, R.F. Lafferty (AC¶¶104-05,

PLAINTIFF'S OPPOSITION TO THE GOLDEN HEAVEN GROUP HOLDINGS LTD., COGENCY GLOBAL, INC., COLLEEN DEVRIES, AND R.F. LAFFERTY & CO.'S MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT

4

299), and the SEC shut down the Company's "sham" auditor for "deliberate and systemic [audit] failures" (AC¶¶47-48).

**C. The Truth Emerges.**

On November 13, 2023, Hindenburg Research ("Hindenburg") posted on X.com ("Twitter") revealing Golden Heaven as "*Another Classic 'China Hustle'*" using an IPO in the U.S. markets to cheat foreign investors.  AC¶101.  While investigative teams "visited each park, on the weekend, typically when amusement parks are busiest, expecting to find vibrant and heavily trafficked parks as suggested in the [C]ompany's investor materials," they uncovered that Golden Heaven's "*claimed high-tech parks appear to be dystopian hellscapes*," AC¶104, with broken-down, dirty attractions, and largely devoid of park guests or employees, AC¶¶107-15.  (Plaintiff's own investigative team confirmed these findings in an independent investigation conducted in June 2024, AC¶¶128-48).  On this news, share price declined by 27.9%.  AC¶116.

On November 16, 2023, Golden Heaven issued a denial, decrying Hindenburg's conclusions as "scare tactics" riddled with "factual errors" with "numerous inflammatory and misleading statements," but the Company did not provide any meaningful rebuttal as promised.  AC¶119.  Shares declined the same day 88.99%.  AC¶123.

On December 8, 2023, Bloomberg published an article about Hindenburg's findings, Golden Heaven's lack of response, and related how "***the Nasdaq exchange is littered with dozens of obvious China-based scams***," "lur[ing] in unsuspecting U.S. retail investors … then exit[ing] through the kind of 'rug pull' decline we are seeing with Golden Heaven." AC¶124. On this news, shares declined another 41.38%.

### III.   ARGUMENT

**A. The AC Pleads Violations Of The Exchange Act.**

**1) The AC Pleads Actionable Misstatements And Omissions About Golden Heaven's Business.**

A statement is misleading "if it would give a reasonable investor the 'impression of a state of affairs that differs in a material way from the one that actually exists,'" *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008), and is false if it is "contradict[ed]" by existing facts, *E. Öhman J:or Fonder AB v. NVIDIA Corp.*, 81 F. 4th 918,  928 (9th Cir. 2023). Whether a public statement is false or misleading is a mixed question generally to be decided by the trier of fact. *In re STEC Inc. Sec. Litig.*, 2011 WL 2669217, at *9 (C.D. Cal. June 17, 2011).

An actionable statement "may be misleading if it omits material information" and "[d]isclosure is required when necessary 'to make statements made, in the light of the circumstances under which they were made, not misleading.'" *Khoja v. Orexigen*

PLAINTIFF'S OPPOSITION TO THE GOLDEN HEAVEN GROUP HOLDINGS LTD., COGENCY GLOBAL, INC., COLLEEN DEVRIES, AND R.F. LAFFERTY & CO.'S MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT

6

*Therapeutics, Inc.*, 899 F.3d 988, 1008-09 (9th Cir. 2018). "As such, companies can control what they have to disclose under these provisions by controlling what they say to the market." *Id*. "But once defendants choose to tout positive information to the market, they are bound to do so in a manner that wouldn't mislead investors, including disclosing adverse information that cuts against the positive information." *Id*.

### a) Statements About Golden Heaven's Parks' Quality, Condition, And Personnel Were False When Made And Omitted Material Information.

Throughout the class period, Golden Heaven affirmatively lauded the "quality," "innovation," "variety," and "condition" of the rides and attractions drawing purportedly large crowds. *E.g.*, AC¶¶34-37, 57-100. Golden Heaven also assured the market about the safety and condition of the rides and attractions. AC¶¶34-36. It also represented that that "each park is managed by a full-time onsite professional team which is responsible for operations," including quality control, AC¶¶35-36, 73, as well as the number of personnel teams allegedly maintaining these rides' conditions, AC¶¶36, 74, 77.

Those statements were false when made because, as the AC alleges, Golden Heaven's "claimed high-tech parks appear to be dystopian hellscapes" with poorly

PLAINTIFF'S OPPOSITION TO THE GOLDEN HEAVEN GROUP HOLDINGS LTD., COGENCY GLOBAL, INC., COLLEEN DEVRIES, AND R.F. LAFFERTY & CO.'S MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT

7

maintained, dilapidated attractions. AC¶104.[2]  Golden Heaven also misled investors about the "full-time onsite professional teams" maintaining the rides, AC¶¶40, 55, 141, 144, and, based on data from China's social endowment office, Golden Heaven dramatically inflated overall employee counts by *as much as 367%*, AC¶77; *Maiman v. Talbott*, 2010 WL 11421950, at *4 (C.D. Cal. Aug. 9, 2010) (numbers adequately alleged to be false and misleading when "Plaintiffs provide specific data underlying those statements to show that they were misleading when made").  This disparity in what Golden Heaven lauded as "quality" rides versus the "dystopian hellscape" reality are "facts to support the notion that Golden Heaven's failure to spontaneously disclose the maintenance levels of specific parks … made … [those] statement[s] ... false or misleading" when made.  *Contra* MTD 7-8.[3]

Rather than the risk that requiring such disclosure might "inject instability into the securities market, as stocks may wildly gyrate based on even fleeting developments" as Defendants blithely maintain (MTD 7-8), it is well settled that "once a [defendant]

---

[2] *E.g.*, AC¶109 (largest park's "water attraction" was a "large pond full of trash"); AC¶133 (detailing park's "rusty, idle rides"); AC¶136 (showcasing that "rides … are not well maintained"); AC¶146 (the "team … noted how the equipment of … rides and attractions looked old, rusty, and in disrepair"); AC¶118 (park had a "'water feature' [that] was a small blow-up pool with dirty water in what seemed to be a far larger, otherwise empty pool structure"); AC¶132 (entrance has "promotional information … for the Chinese New Year Festival … four months earlier").

[3] Unlike Defendants' cited authority in *Brady v. Delta Energy & Commc'ns Inc*., 598 F. Supp. 3d 865 (C.D. Cal. 2022) (MTD 14), thus here "the Amended Complaint is [far from] devoid of factual allegations that could show that Defendants' statements or representations were not made in good faith at the time that they were made." *Id*. at 872.

PLAINTIFF'S OPPOSITION TO THE GOLDEN HEAVEN GROUP HOLDINGS LTD., COGENCY GLOBAL, INC., COLLEEN DEVRIES, AND R.F. LAFFERTY & CO.'S MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT

8

speaks on an issue or topic, there is a duty to tell the whole truth, even when there is no existing independent duty to disclose information." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 258 (2d Cir. 2016); *accord Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698 (9th Cir. 2016). Under these circumstances, disclosure was more than "[]appropriate" (*contra* MTD 8); it was *necessary* to correct the misapprehension about Golden Heaven's main asset driving its revenue and business: the quality and condition of its attractions.[4]

*Weston v. Twitter, Inc.*, 29 F.4th 611 (9th Cir. 2022), is not to the contrary. That case involved Twitter's alleged failure to disclose a minor "setback in dealing with software bugs plaguing" a discrete program, where Twitter already had disclosed such setbacks to the market. *Id.* at 620. In that context, the court noted that "companies do not have an obligation to offer an instantaneous update of every internal development, especially when it involves the oft-tortuous path of product development." *Id.* Here, the conditions of the parks located in China—Golden Heaven's only program driving

---

[4] This is not a "shotgun" pleading case where the "'pleadings … overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses,'" MTD 8 (quoting *Sollberger v. Wachovia Sec., LLC*, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010)); here, the AC alleges each misleading statement and related omission, including date and the speaker, makes clear what portion of each statement is misleading, and provides specific reasons why the statements were misleading when made, which suffices. *In re Intuitive Surg. Sec. Litig.*, 65 F. Supp. 3d 821, 831 (N.D. Cal. 2014); *Bos. Ret. Sys. v. Uber Techs., Inc.*, 2020 WL 4569846, at *5 (N.D. Cal. Aug. 7, 2020) (rejecting puzzle pleading argument even though complaint is "long, confusing, and meandering," such that "it is difficult to locate the main points within it," because defendants could still "figure[e] out what statements are alleged to be false").

PLAINTIFF'S OPPOSITION TO THE GOLDEN HEAVEN GROUP HOLDINGS LTD., COGENCY GLOBAL, INC., COLLEEN DEVRIES, AND R.F. LAFFERTY & CO.'S MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT

revenue—is material and unable to be verified by the average U.S. investor. Tellingly, Defendants do not contend that the parks ever were, or are now, in good condition.

Contrary to Defendants' characterization (at MTD 15), the gravamen of the entire AC "alleg[es] that the investigator[s'] reports reflected the parks' maintenance conditions at the time that Golden Heaven made" the false statements about the parks' condition in the April 2023 Prospectus. *E.g.*, AC¶¶101-48. That these investigations occurred months after those statements does not immunize them. Without stating it outright, Defendants appear to ask this Court to indulge in the fiction that the parks' experienced a sharp decline in quality after the April 2023 statements.[5] But as the AC alleges, the investigations uncovered that the parks had been abandoned and in states of disrepair and decay long before the April 2023 IPO. *In re Wells Fargo Sec. Litig.*, 12 F.3d 922, 927 (9th Cir. 1993) (metrics adequately alleged to be false when "the contingencies which proved them inadequate were foreseen or foreseeable"). It also ignores how Golden Heaven continued to represent the same quality of the parks up until "the end of the fiscal year in" September 2023—a mere two months before the Hindenburg investigation confirmed this falsity—and continued to maintain that the

---

[5] If that were true, it likewise would trigger a duty to disclose this material change. *Arena Pharms.*, 840 F.3d at 705-06 ("'once defendants cho[o]se to tout' positive information" "they [are] bound to do so in a manner that wouldn't mislead investors,' including disclosing adverse information that cuts against the positive").

PLAINTIFF'S OPPOSITION TO THE GOLDEN HEAVEN GROUP HOLDINGS LTD., COGENCY GLOBAL, INC., COLLEEN DEVRIES, AND R.F. LAFFERTY & CO.'S MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT

investigation's findings were false up until November 16, 2023, when it publicly denied those findings. AC¶¶117-19.  Moreover, Defendants' public statements since the IPO relayed how capital would be used to "upgrade" the parks by September 2023—yet site visits in November 2023 and June 2024 show no progress.  AC¶¶37, 92-97. These facts too "directly contradict what" Defendants knew at the time and thus were false.

### b) Statements About Golden Heaven's Park Attendance And Revenue Were False And Misleading And Omitted Material Information.

While the Company's disclosures would have the market believe the parks attracted guests in droves, in reality, the parks barely attracted a fraction of that amount—and in some cases, were totally barren.  AC¶¶101-48.  As Defendants do not dispute, the lion's share of the Company's revenue (over 90%) derives from park attendance; of course, if those numbers are false, Golden Heaven also misled investors about its revenue.

Defendants' claim that Plaintiff's "attendance-related" allegations rely on "only unsupported excerpts from the Prospectus" or "strained logic" (MTD 5-6) ignores the host of allegations confirming their falsity.  Critically, Golden Heaven's cited valuation figures of attendance for each park, when divided by 365 day per year, *exceeded the parks' daily maximum park capacity by more than double*.  AC¶¶39, 58-67.  Two independent investigations confirmed that this apparent wild success—which would have investors believe the crowded parks were bustling with activity—was a sham:  in

PLAINTIFF'S OPPOSITION TO THE GOLDEN HEAVEN GROUP HOLDINGS LTD., COGENCY GLOBAL, INC., COLLEEN DEVRIES, AND R.F. LAFFERTY & CO.'S MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT

11

reality, the parks were almost completely empty, and two were completely deserted. AC¶¶101-48. For instance, while Golden Heaven claimed its largest park (purportedly accounting for 36% of total guests) "had 890,000 guests in 2022, or 2,400/day, despite having just a 1,100 guest capacity," AC¶¶39, 53, 58-59, 107—investigators visiting the same property on a Saturday observed only "about 10 cars in the lot," AC¶¶108, 129. Defendants also ignore the allegations that, contrary to Golden Heaven's rosy picture heralding its innovative attractions, the parks' rides and entertainment options were nonfunctional or in serious disrepair—meaning there were no attractions that could garner such significant demand. *Supra* 7-11; *Scheller v. Nutanix*, 2020 WL 5500422, at *7 (N.D. Cal. Sept. 11, 2020) (statements could lead investors "to conclude that … [company's] pipeline for new customers was robust when, in fact, it was facing a significant decline"). Defendants also never address how the AC pleads that—despite Golden Heaven's false statements to the contrary—almost no employees manage, operate, or maintain these rides. *Supra* 7-8. Surely if demand were strong, and guests attended in the droves surpassing the park's capacity daily (as Defendants argue), the parks would need sufficient personnel to match this demand. In addition, while the IPO valued Golden Heaven at $200 million dollars, and the Company apparently was enjoying yearly revenues over $40 million and a $1.2 billion market cap (AC¶¶38, 51, 103), the AC alleges how all six parks were owned by a related entity (controlled by

Defendant Jin) and sold to Golden Heaven for only $7.5 million a year earlier, in 2021 (AC¶41), yet another indication that the purported numbers in attendance (and thus revenue) were false, given these "statements [were] inconsistent with [Golden Heaven's] real-time financial information." *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1144 (9th Cir. 2017); *Brown v. Papa Murphy's Holdings Inc.*, 2021 WL 235865, at *5 (W.D. Wash. Jan. 12, 2021) (statements actionable where they paint a "rosier view of [company's] financial prospects").

These allegations also belie Defendants' claim that "there are innocent explanations for why … the parks' yearly attendance numbers …  might exceed that park's daily capacity," and Defendants offer only two: (1) "that the parks' occupants may have been present at different times on the same day" or that (2) "the parks may have operated over capacity during some days of the year."  MTD 6.  For the first, allegations that the investigative visits occurred on the busiest days, and monitored activity all day, undercuts the innocent explanation that the "parks' occupants may have been present at

PLAINTIFF'S OPPOSITION TO THE GOLDEN HEAVEN GROUP HOLDINGS LTD., COGENCY GLOBAL, INC., COLLEEN DEVRIES, AND R.F. LAFFERTY & CO.'S MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT

13

different times on the same day."[6]  Nor were the parks "operat[ing at] over capacity during some [other] days of the year" given allegations employees confirmed that the nearly empty park was as "busy as it normally was" (AC¶114) and, at another site, that "the parking lot can handle only about 60 cars" (AC¶137).  It is further undermined by the fact that Plaintiff's investigators visited the parks on various days during the peak summer season, yet all the parks displayed the same desolate scene.  AC¶¶128-48.  That this disparity in numbers is not merely "innocent" (MTD 6) is further confirmed by the AC's allegations that Defendants used the IPO to exploit foreign investors in the U.S. markets for their own gain (AC¶¶42-50) through a suspicious pump-and-dump scheme (*e.g.*, AC¶¶38, 51, 150 (share price went up (320%) in value since the April 2023 IPO, despite little news to justify the gains)).

Defendants do not dispute that the AC's reported guest numbers for 2021 and 2022 are in the April 2023 Prospectus, MTD 6, but seek to muddy the waters by claiming Plaintiff's allegations regarding "attendance data from the fiscal year ending September

---

[6] *E.g.*, AC¶112 (investigator arrived "around 9am on a Saturday and stayed for around 7 hours" and "checked the parking lot roughly every hour"); AC¶¶143-44 (diligence team visited park which "appeared to be completely vacant"; the "team saw no visitors the entire day," "no one was using the rides and attractions," and "did not see a single … employee"); AC¶114 (investigator "counted a maximum of 44 cars in the parking lot during late morning and early afternoon" and "[a]n attendant told our investigator that the park was as 'busy as it normally was'"); AC¶129 ("due diligence team spent the entire day at … Golden Heaven's largest park … [finding] during that entire day, the park was almost completely empty"); AC¶134 ("due diligence team spent the day at the second largest park …witness[ing]" only a fraction of the park's 850-guest capacity); AC¶140 ("due diligence team visited the fifth largest park [capacity of 530 visitors]" and "[d]uring that time … witnessed only about 50 visitors in the morning, and around 80-120 guests in the afternoon").

PLAINTIFF'S OPPOSITION TO THE GOLDEN HEAVEN GROUP HOLDINGS LTD., COGENCY GLOBAL, INC., COLLEEN DEVRIES, AND R.F. LAFFERTY & CO.'S MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT
14

30, 2023" "are not materially false or misleading and do not support their claims." MTD 6-7. But the September 2023 numbers (listed in Golden Heaven's annual report on Form 20-F, filed with the SEC on February 15, 2024) further confirm the scope of the fraud outlined in the April 2023 Prospectus. *Venkataraman v. Kandi Techs. Grp., Inc.*, 2022 WL 4225562, at *6 (S.D.N.Y. Sept. 13, 2022) (post-class period statements are relevant for falsity). Like the numbers from the fiscal years 2022 and 2021, the September 2023 figures vastly overinflate the number of guests (and thus revenue). For instance, in 2023 Golden Heaven must have inflated the number of yearly guests attending its largest park (with a capacity of 1,100 per day) given the reported number of guests (600,000) divided by 365 days in a year is 1,644. (Form 20-F, filed February 15, 2024). The Hindenburg investigation—conducted a *mere two months* after September 2023—confirmed this must be false given this park was "nearly empty." AC¶108. These 2023 numbers from the annual report, too, confirm this falsity.

### c) These Statements Are Actionable.

The PSLRA's safe harbor (MTD 9-12) does not shield this fraud. While Defendants cherry pick *only three* statements they identify as forward looking (MTD 11, citing AC¶¶90, 84, 78), each are about *present* facts regarding the high numbers of visitors attending the parks or the *current* state of the parks' condition. *E.g.*, AC¶84 (Defendant Jin "excited by … excellent growth" observed during holiday); AC¶90 ("[w]e *are*

*seeing* more visitors … and we keep enhancing management and operations" of parks); AC¶78 ("innovative amusement facilities will enable us to maintain the *existing guest patronage* [and] attract new guests…").  Defendants cannot hide behind the PSLRA's safe harbor where, as here, management is expressing a *current* belief in the accuracy of forecasts, and Plaintiff alleges that such belief is not genuinely held. *Quality Systems*, 865 F.3d at 1142; *Karri v. Oclaro, Inc.*, 2020 WL 5982097, at *5 (N.D. Cal. Oct. 8, 2020) (figures in fairness opinion not forward-looking statements because they were "declaration[s] of existing fact" concerning the "present value" of the target's stock). Merely stating the words "believe" (MTD 11) does not render these statements forward looking, as "those magic words can preface nearly any conclusion, and the resulting statements … remain perfectly capable of misleading investors."  *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 192-93 (2015). Rather, "[w]hen omitted contrary facts substantially undermine the conclusion a reasonable investor would reach from a statement of opinion, that statement is misleading and actionable." *Abramson v. Newlink Genetics Corp.*, 965 F.3d 165, 177 (2d Cir. 2020).  That is the case here.

Nor did Golden Heaven include "meaningful" cautionary language to put "investors on notice of 'risks of a significance similar to that actually realized.'" MTD 12.  None of the cited risks regarding "the high fixed cost of operating amusement parks,"

PLAINTIFF'S OPPOSITION TO THE GOLDEN HEAVEN GROUP HOLDINGS LTD., COGENCY GLOBAL, INC., COLLEEN DEVRIES, AND R.F. LAFFERTY & CO.'S MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT

16

"possible declines in guest spending and confidence," "funding future capital investments," "brand perception," and "adverse publicity," MTD 12, alerted investors to the true risk that the parks were in disrepair, nearly abandoned, and that Golden Heaven inflated the numbers of guests, revenue, personnel, and valuation, *supra* 7-15. Moreover, "[c]autionary words about future risk cannot insulate … failure to disclose that the risk has transpired." *In re Countrywide*, 588 F. Supp. 2d 1132, 1178 n.62 (C.D. Cal. 2008). Such statements about the "*possible* declines in guest spending and confidence" (*e.g.*, MTD 12, Ex. A 16-22),[7] do not suffice as they omit the fact that Golden Heaven already was experiencing such declines due to these undisclosed systemic issues, *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 780 (9th Cir. 2023).[8]

While Defendants spend two sentences contending that such statements are "immaterial" (MTD 12),[9] Defendants' failure to expound on this theory is hardly

---

[7] Defendants ask the Court to accept their subjective interpretation of the Exhibits as true—a tactic the Ninth Circuit has rejected. *Khoja*, 899 F.3d at 998 (admonishing "a concerning pattern in securities cases like this one: exploiting [judicial notice and incorporation by reference] improperly to defeat what would otherwise constitute adequately stated claims at the pleading stage").

[8] *In re Harman Int'l Indus., Inc. Sec. Litig.*, 791 F.3d 90, 103 (D.C. Cir. 2015) (cited at MTD 12), actually supports Plaintiff's arguments; the court found the "the purportedly cautionary statements [about amassed inventory] were not meaningful because they were misleading in light of historical fact," given the "[r]eferences … did not convey that inventory was obsolete," a fact "that had already manifested itself." *Id*. at 104. Defendants' statements omitting that the parks were in disrepair and poorly attended likewise "had already manifested itself."

[9] *In re Cutera Sec. Litig.*, 610 F.3d 1103 (9th Cir. 2010) (cited at MTD 12), provides no help; there the court concluded the challenged statements were not material given the substance of the allegations had previously been disclosed to the market. *Id*. at 1110. That is not the case here.

PLAINTIFF'S OPPOSITION TO THE GOLDEN HEAVEN GROUP HOLDINGS LTD., COGENCY GLOBAL, INC., COLLEEN DEVRIES, AND R.F. LAFFERTY & CO.'S MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT

17

surprising given these statements address fundamental issues of the Company's revenue, attendance, and park condition—all issues the reasonable U.S. investor undoubtedly would find material and could not ascertain themselves.

For the same reasons, nor are any of the challenged statements mere "puffery." MTD 13-14.  As an initial matter, Defendants fail to identify what statements amount to puffery; that alone is reason to reject this claim.  In any event, "[a] statement of corporate puffery is so exaggerated or vague that no reasonable investor would rely upon it when considering the total mix of information available," "not capable of objective verification," and "lack[s] a standard against which a reasonable investor could expect them to be pegged." *In re Intuitive Surgical Sec. Litig.*, 65 F. Supp. 3d at 834-35. Defendants' statements about the numbers of park attendees, revenue, business valuation, park conditions, and personnel do not meet any of those requirements.  Courts regularly conclude such verifiable statements about a Company's financial standing and operations are not puffery. *New Century*, 588 F. Supp. 2d 1206, 1226 (C.D. Cal. 2008) ("assurances of strong credit quality" not "puffery"); *Hammer v. Frontier Fin. Corp.*, 2011 WL 13229260, at *9 (W.D. Wash. Sept. 7, 2011) ("capital ratios" "remain strong" "not puffery"); *Jui-Yang Hong v. Extreme Networks*, 2017 WL 1508991, at *12 (N.D. Cal. Apr. 27, 2017) (integration "on track" and "ahead of plan" not puffery because have "some basis in objective and verifiable fact").  Even if Defendants' statements

PLAINTIFF'S OPPOSITION TO THE GOLDEN HEAVEN GROUP HOLDINGS LTD., COGENCY GLOBAL, INC., COLLEEN DEVRIES, AND R.F. LAFFERTY & CO.'S MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT

18

were mere optimism (they are not), such statements are actionable where they "address[] specific aspects of a company's operation that the speaker knows to be performing poorly." *Weston v. DocuSign, Inc*., 669 F.Supp.3d 849, 881 (N.D. Cal. 2023). That is true here.

### 2) The AC Raises A Strong Inference Of Scienter.

Scienter is "a mental state that not only covers intent to deceive, manipulate, or defraud, but also deliberate recklessness." *Arena Pharms*, 840 F.3d at 705. The inference of scienter "need not be irrefutable, i.e., of the 'smoking-gun' genre, or even the 'most plausible of competing inferences," but must merely be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007). And, because it is "rare that a wrongdoer will admit to the required state of mind," scienter "can be … pled through circumstantial evidence." *In re Network Assocs., Inc., Sec. Litig.*, 2000 WL 33376577, at *8 (N.D. Cal. Sept. 5, 2000) ("PSLRA calls for a 'strong inference,' not an outright confession or an airtight case at the pleading stage."). Courts should focus on "whether *all* of the facts … collectively, give rise to a strong inference of scienter." *Tellabs*, 551 U.S. at 310.

Defendants dedicate a mere two pages to attacking scienter, but do not actually address a single allegation of scienter in the AC. MTD 17-18 (citing AC¶¶100, 167).

PLAINTIFF'S OPPOSITION TO THE GOLDEN HEAVEN GROUP HOLDINGS LTD., COGENCY GLOBAL, INC., COLLEEN DEVRIES, AND R.F. LAFFERTY & CO.'S MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT

19

Here, a holistic review of the AC's well-pled facts demonstrates a "strong inference" of Defendants' scienter.

*First*, the AC alleges Defendants had access to and/or actual knowledge of undisclosed facts undermining the accuracy of the alleged misstatements. For instance, while the IPO valued Golden Heaven at $200 million dollars, disclosures in the Prospectus relate that all six parks were owned by a related entity (controlled by Defendant Jin) and sold to Golden Heaven for only $7.5 million a year earlier, in 2021—confirmation that Defendants knew the parks were wildly overvalued. AC¶153. *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1064 (9th Cir. 2000) (scienter where defendants "had reasonable grounds to believe material facts existed that were misstated or omitted"). The AC also alleges how Golden Heaven claimed that, in 2022, it had hosted 2.41 million guests across its six parks, driving over $41.8 million in revenue for the 2022 fiscal year, but these numbers were "hardly levels" that would justify the Company's $1.2 billion market capitalization. AC¶¶38, 51, 103; *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d at 776, 784 (9th Cir. 2008) (courts "need not close their eyes to circumstances that are probative of scienter viewed with a practical and common-sense perspective"). Moreover, Defendants' November 16, 2023 denial of the Hindenburg Report's claims (AC¶¶117-19) shows they had access to this information, and the lack of any true defense is strong evidence that Defendants' statements were, in fact,

PLAINTIFF'S OPPOSITION TO THE GOLDEN HEAVEN GROUP HOLDINGS LTD., COGENCY GLOBAL, INC., COLLEEN DEVRIES, AND R.F. LAFFERTY & CO.'S MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT

20

fraudulent. *Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000) (scienter established through executives' alleged access to "information suggesting that their public statements were not accurate"). "[T]hat [] defendants published statements when they knew facts suggesting the statements were inaccurate … is classic evidence of scienter." *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1022 (S.D. Cal. 2005).

*Second*, the AC alleges that these operations and metrics were so important to Golden Heaven's core business that Defendants knew or were severely reckless in not knowing about them. AC¶155. Indeed, Golden Heaven has related how the vast majority of its revenue (over 90%) derives from park attendance, which relies on the condition of the parks. AC¶33. It strains credulity to believe that Defendants were not aware that these key drivers of revenue were not accurate, particularly considering the repeated statements during and after the IPO touting these inflated numbers. *Supra* 11-15. Courts may "impute scienter to individual defendants … where … a company's public statements are so important and dramatically false that they would create a strong inference that at least some corporate officials knew of the falsity upon publication," *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 607-08 (9th Cir. 2014), and given the vast disparity in the numbers and reality, the true "facts [were] prominent enough that it would be absurd to suggest that top management was unaware of them," *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1001 (9th Cir. 2009); *Scott v.*

PLAINTIFF'S OPPOSITION TO THE GOLDEN HEAVEN GROUP HOLDINGS LTD., COGENCY GLOBAL, INC., COLLEEN DEVRIES, AND R.F. LAFFERTY & CO.'S MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT

21

*ZST Digit. Networks, Inc.*, 896 F. Supp. 2d 877, 892 (C.D. Cal 2012); *In re Arrowhead Rsch. Corp. Sec. Litig.*, 2016 WL 6681180, at *4 (C.D. Cal. Aug. 18, 2016), *aff'd*, 711 F.App'x 434 (9th Cir. 2018).  At the very least, "[D]efendants failed to review or check information that they had a duty to monitor, or ignored obvious signs of fraud," which is "sufficient" to infer "recklessness." *N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1098 (9th Cir. 2011).

*Third*, although not required, the AC's motive and opportunity allegations support a strong inference of scienter.  It alleges that then-CEO Defendant Jin owned nearly 30% of Golden Heaven's total outstanding shares and benefited financially from overinflating the value of the business, particularly given allegations that Jin could not access Chinese markets due to legal troubles and equity freezes from misconduct in China.  AC¶150; *see S.E.C. v. Lee*, 720 F. Supp. 2d 305, 335 (S.D.N.Y. 2010) (scienter is supported where "[a defendant] is alleged to have benefited, in a concrete and personal way that an average shareholder could not"); *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994) (allegations that "false statements were made in an effort to" delay liability are "benefits" that support motive). Indeed, while disclosures in the Prospectus show all six parks were valued at $7.5 million in 2021, a year later the IPO valued Golden Heaven *at twenty-seven times* that amount ($200 million), a massive windfall for Defendant Jin.  AC¶41.  And Defendant Jin's departure so soon after the

truth was revealed raises an inference of misconduct at the executive level with respect to the Golden Heaven launch and post-launch representations about its financial status. AC¶154; *In re WageWorks, Inc., Sec. Litig*., 2020 WL 2896547, at \*6 (N.D. Cal. June 1, 2020) ("suspicious" resignations support scienter).[10]

"[V]iewed in totality, there is no doubt the allegations, at this early phase of the proceedings, present at least as strong an inference of scienter as any competing innocent inference." *N.M. State*, 641 F.3d at1102-03.[11]

**B. The AC Pleads Violations Of The Securities Act.**

For Section 11, Plaintiff "need show only [1] that [plaintiff] bought the security and [2] that there was a material misstatement or omission." *Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 860 (9th Cir. 2013). Section 15 imposes secondary liability on those who "control[] any person liable under [Section 11]." 15 U.S.C. § 77o(a). As a strict liability statute—liability "is virtually absolute, even for innocent [material] misstatements," *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381-82 (1983), so

---

[10] This scienter is imputed to the Company. *In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 479 (9th Cir. 2015) (imputing, to the company, the scienter of its "founder and CEO, the one person on whom the board undoubtedly should have kept close tabs").

[11] This is particularly true given the latest revelations (occurring after the AC was filed in July 2024) disclosing that Golden Heaven has been subject to an SEC investigation since February 20, 2024 "to determine whether there have been any violations of the federal securities law" (August 8, 2024 Prospectus Supplement), which contributes to an inference of scienter. *See, e.g.*, *In re ITT Educ. Servs., Sec. Litig.*, 34 F. Supp. 3d 298, 309–10 (S.D.N.Y. 2014) (finding allegation of pending investigations contribute to inference that "Defendants were behaving fraudulently"; listing cases); *Washtenaw Cty. Emps. Ret. Sys. v. Avid Tech., Inc.*, 28 F. Supp. 3d 93, 115 (D. Mass. 2014) (a "government investigation can be seen as one more piece of the puzzle … that add up to a strong inference of scienter").

PLAINTIFF'S OPPOSITION TO THE GOLDEN HEAVEN GROUP HOLDINGS LTD., COGENCY GLOBAL, INC., COLLEEN DEVRIES, AND R.F. LAFFERTY & CO.'S MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT

23

Plaintiff need not plead scienter, reliance, or loss causation for these claims, *Hildes*, 734 F.3d at 859.[12]

### 1) Rule 9(b) Does Not Apply To Claims Under The Securities Act.

Rule 9(b) does not apply here. *Contra* MTD 21-22. Where a plaintiff "carefully segregate[s] its allegations of negligence … from its allegations of fraud," creating "a clear conceptual separation in the complaint between claims sounding in negligence and those sounding in fraud," courts refuse to impose this heightened pleading standard. *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 273 (3d Cir. 2006).

That is the case here. Plaintiff pled the Securities Act allegations entirely separate from the Exchange Act allegations, as two separate complaints within a single pleading, and the AC specifies that the Section 11 claims (based solely in negligence) expressly disclaim and *do not* incorporate any of the Exchange Act allegations. AC¶¶348, 356. "In similar circumstances, courts have consistently held that Section 11 … [is] subject to notice pleading where, as here, the division between the claims is clear." *Fresno Cnty. Emps.' Ret. Assn. v. comScore*, 268 F. Supp. 3d at 526, 558 (S.D.N.Y. 2017) (collecting cases).

In addition, "a complaint that neither specifically alleges fraud 'nor alleges facts that would necessarily constitute fraud' does not sound in fraud and is not governed by Rule

---

[12] Plaintiff voluntarily withdraws his Section 12 claims.

PLAINTIFF'S OPPOSITION TO THE GOLDEN HEAVEN GROUP HOLDINGS LTD., COGENCY GLOBAL, INC., COLLEEN DEVRIES, AND R.F. LAFFERTY & CO.'S MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT

24

9(b)." *Rieckborn v. Jefferies LLC*, 81 F. Supp. 3d 902, 917 (N.D. Cal. 2015).  Here, the Section 11 claims do not depend on allegations of fraud.  The alleged conduct— mischaracterizing or presenting incomplete information in the Offering Documents— can certainly occur without an intent to deceive.  That Plaintiff bases the Section 10(b) and 11 claims on common documents and statements "does not take away plaintiffs' right to plead in the alternative that defendants violated provisions requiring only negligence." *See In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 632 (S.D.N.Y. 2007) (even when complaint indicated plaintiffs believed the defendants "were engaged in a massive fraud," they were entitled to plead in the alternative so long as the complaint was "carefully structured so as to draw a clear distinction between negligence and fraud claims").[13]

### 2) The AC Pleads Actionable False Statements And Omissions.

Defendants argue the AC fails to allege that the statements identified in the Offering Documents were false or rendered false by omission under either Rule 8(a) or Rule 9(b). MTD 22.  For the reasons set forth in Section A.1, *supra* 6-19, the AC plausibly alleges their falsity under either standard.

---

[13] Nor does Plaintiff allege the "same" facts for both complaints, as Defendants claim. MTD 21. Rather, while much of the same factual background is relevant and pled in both complaints, the Section 10(b) claim challenges additional post-IPO statements from other, later sources.  AC¶¶84-100.

PLAINTIFF'S OPPOSITION TO THE GOLDEN HEAVEN GROUP HOLDINGS LTD., COGENCY GLOBAL, INC., COLLEEN DEVRIES, AND R.F. LAFFERTY & CO.'S MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT

### 3) The AC Adequately Pleads Violations Of Items 105 And 303.

Under Items 303 and 105, Defendants had a duty to disclose in the negative trends, events, uncertainties, or risks related to Golden Heaven's operation. "The same facts underlying an Item 303 … violation may also support an Item [105] violation, and a court's rationale for determining the former may also support the same determination of the latter." *Panther Partners Inc. v. Jianpu Tech. Inc.*, 2020 WL 5757628, at *7 (S.D.N.Y. Sept. 27, 2020).

Defendants' cursory claim that the AC is "absen[t] of allegations specifying why the omissions made Golden Heaven's disclosures" "incomplete," or "misleading or untrue," MTD 23, is belied by the AC's allegations that, well before this filing, Defendants were aware that Golden Heaven was seriously overvalued and that the Offering Documents overinflated the numbers of park guest, revenue, and the quality of the parks' attractions—yet did not disclose those known facts to the market. *Supra* 7-15.[14]

### 4) The AC Adequately Alleges Plaintiff's Section 11 Standing.

Section 11 provides a cause of action to any person who buys a security issued under a materially false or misleading registration statement. As Defendants' own cited

---

[14] *Rubke v. Capitol Bancorp Ltd*, 551 F. 3d 1156, 1162 (9th Cir. 2009) (cited at MTD 21), did not address required disclosures under Item 303 or 105. And *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257 (2024) does not bar Plaintiff's claims because Defendants' statements consisted of half-truths, which "omitt[ed] critical qualifying information." 601 U.S. at 263.

PLAINTIFF'S OPPOSITION TO THE GOLDEN HEAVEN GROUP HOLDINGS LTD., COGENCY GLOBAL, INC., COLLEEN DEVRIES, AND R.F. LAFFERTY & CO.'S MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT

authority holds (MTD 19), a "Plaintiff[] need not have purchased shares in the offering made under the misleading registration statement; those who purchased shares in the aftermarket have standing to sue provided they can trace their shares back to the relevant offering." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1106 (9th Cir. 2013). Rather, "[w]hen all of a company's shares have been issued in a single offering under the same registration statement, this 'tracing' requirement generally poses no obstacle." *Id.*[15]

The AC alleges that Plaintiff "purchased or otherwise acquired Golden Heaven common stock pursuant and/or traceable to the Registration Statement issued in connection with the Company's IPO." AC¶342. While Defendants' claim (without citation to any documents or filings) that Plaintiff purchased his shares post-IPO and "after additional shares entered the market" (MTD 20),[16] Golden Heaven issued shares in a single offering under one registration statement. Defendants do not point to any other registration statement from which shares could have come into the market, nor offer evidence that unregistered shares came into the market. Statutory standing is thus

---

[15] Generally, allegations of traceability are factual, not properly decided on a motion to dismiss. *In re Beyond Techs. Corp. Sec. Litig.*, 266 F. Supp. 2d 1150, 1171-72 (C.D. Cal. 2003).

[16] Defendant R.F. Lafferty now notes that Plaintiff's certification (DE 19-3, 34-6) was not attached to the AC but acknowledges that the class period and standing analysis is unchanged under both certifications (*e.g.*, Lafferty MTD 6, n.5). While Defendant R.F. Lafferty & Co. did not raise any issues regarding the certification at the meet and confer, for inclusiveness, Plaintiff will issue a notice of filing attaching that certification.

PLAINTIFF'S OPPOSITION TO THE GOLDEN HEAVEN GROUP HOLDINGS LTD., COGENCY GLOBAL, INC., COLLEEN DEVRIES, AND R.F. LAFFERTY & CO.'S MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT

27

adequately pled, particularly given the lenient Rule 8(a) standards applicable here. *In re Mun. Mortg. & Eq., LLC, Sec. & Derivative Litig.*, 876 F. Supp. 2d 616, 658-59 (D. Md. 2012) (allegation that plaintiff purchased his shares "pursuant to, or traceable to, the SPO registration statement and prospectus" sufficient after *Twombly* and *Iqbal*); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d at 401, 403 (D. Md. 2004) (allegation that "Lead Plaintiff … purchased … common stock … pursuant to the registration and prospectus" "sufficient to state a §11 claim").

## IV. CONCLUSION

Defendants' motions should be denied. Alternatively, Plaintiff requests leave to amend to cure any deficiencies. *Cisneros v. Allianz Life Ins. of N. Am.*, 2019 WL 9656383, at *4 (N.D. Cal. Dec. 2, 2019).

Dated: November 7, 2024                    Respectfully submitted,

**POMERANTZ LLP**

*/s/ Samantha Daniels*
Samantha Daniels (admitted *pro hac vice)*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: 9212) 661-1100
(310) 405-7190
sdaniels@pomlaw.com
jpafiti@pomlaw.com

J. Alexander Hood II
(admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
ahood@pomlaw.com

*Counsel for Plaintiff*

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Plaintiff*

PLAINTIFF'S OPPOSITION TO THE GOLDEN HEAVEN GROUP HOLDINGS LTD., COGENCY GLOBAL, INC., COLLEEN DEVRIES, AND R.F. LAFFERTY & CO.'S MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT

29

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,967 words, which complies with the word limit of L.R. 11-6.1.

November 7, 2024                                  __/s/ Samantha Daniels_____
                                                              Samantha Daniels