POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Lead Plaintiff Rahul Patange and Lead Counsel for the Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE GOLDEN HEAVEN GROUP HOLDINGS LTD. SECURITIES LITIGATION<br><br>THIS DOCUMENT RELATES TO *ALL ACTIONS* | Case No.: 2:23-cv-10619-HDV-SK<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS PLAINTIFF'S SECTION 11 CAUSE OF ACTION (15 U.S.C. § 77k)**<br><br>Hearing Date: March 13, 2025<br>Time: 10:00 AM<br>Courtroom: 5B<br>Judge: Hon. Hernán D. Vera |

PLAINTIFF'S OPPOSITION TO THE DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS PLAINTIFF'S SECTION 11 CAUSE OF ACTION

## **TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ...................................................................................1

II.   STATEMENT OF FACTS .........................................................................................2

    A.   China-Based Amusement Park Company, Golden Heaven, Solicits U.S. Markets in An IPO Based On Financials in the Registration Statement and Audit Report Prepared and Certified By Borgers CPA. ........................................................2

    B.   Golden Heaven's Registration Statement Misstated Every Key Metric of the Operating Business, Including Attendance and Revenue. ..............................3

    C.   The Truth Emerges. .......................................................................................4

    D.   The SEC Shuts Down Borgers CPA Permanently Due to Its Massive Fraud Affecting More Than 1,500 SEC Filings. ....................................................5

III.  ARGUMENT ............................................................................................................6

    A.   The AC Pleads Violations of Section 11 Of The Securities Act Against Borgers CPA. .............................................................................................................6

    1.   Standard To Plead a Section 11 Claim. ........................................................6

    B.   Borgers CPA Is Liable Under Section 11 For Golden Heaven's Materially Misstated Certified Financial Statements and Audit Report in the Registration Statement ......................................................................................................8

    1.   Golden Heaven's Certified Financial Statements and Audit Report Were Material and Were Misstated in The Registration Statement. ...........................8

    2.   Borgers CPA Is Liable For Certifying The Material Misstatements In The Financial Statements and Its Audit Report. .................................................10

    C.   The AC Adequately Pleads Plaintiff's Section 11 Standing. ........................13

IV.   CONCLUSION .......................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................................7

*Cisneros v. Allianz Life Ins. of N. Am.*,
  2019 WL 9656383 (N.D. Cal. Dec. 2, 2019) ...............................................................15

*Dean v. China Agritech, Inc.*,
  2011 WL 5148598 (C.D. Cal. Oct. 27, 2011)...............................................................10

*Falkowski v. Imation Corp.*,
  309 F.3d 1123 (9th Cir. 2002), *abrogated on other grounds by Kircher v. Putnam Funds Tr.*,
  547 U.S. 633 (2006).....................................................................................................7

*Gilligan v. Jamco Dev. Corp.*,
  108 F.3d 246 (9th Cir. 1997) .......................................................................................7

*Goldstein v. MCI WorldCom*,
  340 F.3d 238 (5th Cir. 2003) .......................................................................................9

*Henning v. Orient Paper, Inc.*,
  2011 WL 2909322 (C.D. Cal. July 20, 2011)...............................................................10

*Herman & MacLean v. Huddleston*,
  459 U.S. 375 (1983)......................................................................................6, 7, 11, 12

*Hertzberg v. Dignity Partners, Inc.*,
  191 F.3d 1076 (9th Cir. 1999) .....................................................................................13

*Holmes v. Baker*,
  166 F. Supp. 2d 1362 (S.D. Fla. 2001) ........................................................................13

*in Proctor v. Vishay Intertechnology Inc.*,
  584 F.3d 1208 (9th Cir. 2009) .....................................................................................7

*In re Adaptive Broadband Sec. Litig.*,
  2002 WL 989478 (N.D. Cal. Apr. 2, 2002) ..................................................................9

*In re Cendant Corp. Litig.*,
  60 F. Supp. 2d 354 (D.N.J. 1999) ................................................................................13

PLAINTIFF'S OPPOSITION TO THE DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS PLAINTIFF'S SECTION 11 CAUSE OF ACTION

ii

*In re Century Aluminum Co. Sec. Litig.*,
　729 F.3d 1104 (9th Cir. 2013) ................................................................................14

*In re China Educ. All., Inc. Sec. Litig.*,
　2011 WL 4978483 (C.D. Cal. Oct. 11, 2011)..........................................................10

*In re Countrywide Fin. Corp. Sec. Litig.*,
　588 F. Supp. 2d 1132 (C.D. Cal. 2008) ....................................................................6

*In re Daou Sys.*,
　411 F.3d 1006 (9th Cir. 2005), *abrogated on other grounds by Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011)....................................................................6, 7, 9

*In re DDi Corp. Sec. Litig.*,
　2005 WL 3090882 (C.D. Cal. July 21, 2005).............................................................7

*In re Glob. Crossing, Ltd. Sec. Litig.*,
　322 F. Supp. 2d 319 (S.D.N.Y. 2004).....................................................................12

*In re Immune Response Sec. Litig.*,
　375 F. Supp. 2d 983 (S.D. Cal. 2005)......................................................................14

*In re Lehman Bros. Sec. & Erisa Litig.*,
　131 F. Supp. 3d 241 (S.D.N.Y. 2015)......................................................................11

*In re Morgan Stanley Info. Fund Sec. Litig.*,
　592 F.3d 347 (2d Cir. 2010)......................................................................................13

*In re Mun. Mortg. & Equity, LLC, Sec. & Derivative Litig.*,
　876 F. Supp. 2d 616 (D. Md. 2012), *aff'd sub nom. Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874 (4th Cir. 2024) ......................................................................14

*In re OSG Sec. Litig.*,
　971 F. Supp. 2d 387 (S.D.N.Y. 2013)......................................................................11

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
　351 F. Supp. 2d 401 (D. Md. 2004) ........................................................................14

*In re SeeBeyond Techs. Corp. Sec. Litig.*,
　266 F. Supp. 2d 1150 (C.D. Cal. 2003) ..................................................................14

*In re Ubiquiti Networks, Inc. Sec. Litig.*,
　33 F. Supp. 3d 1107 (N.D. Cal. 2014), *aff'd in part, rev'd in part on other grounds*, 669 F. App'x 878 (9th Cir. 2016) ..........................................................................14

*In re Velti PLC Sec. Litig.*,
　2015 WL 5736589 (N.D. Cal. Oct. 1, 2015)............................................................13

PLAINTIFF'S OPPOSITION TO THE DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS PLAINTIFF'S SECTION 11 CAUSE OF ACTION

iii

*In re Wachovia Equity Sec. Litig.*,
753 F. Supp. 2d 326 (S.D.N.Y. 2011).............................................................................. 11, 12

*In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*,
259 F.R.D. 490 (W.D. Wash. 2009) ....................................................................................... 12

*In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*,
694 F. Supp. 2d 1192 (W.D. Wash. 2009)............................................................................. 13

*In re WorldCom, Inc. Sec. Litig.*,
352 F. Supp. 2d 472 (S.D.N.Y. 2005)............................................................................. 12, 13

*In re Worlds of Wonder Sec. Litig.*,
694 F. Supp. 1427 (N.D. Cal. 1988) ..................................................................................... 12

*Johnson v. Knowles*,
113 F.3d 1114 (9th Cir. 1997) ................................................................................................. 7

*Kinney v. Metro Glob. Media, Inc.*,
170 F. Supp. 2d 173 (D.R.I. 2001).......................................................................................... 13

*McFarland v. Memorex Corp.*,
493 F. Supp. 631 (N.D. Cal. 1980), *reconsideration granted on other grounds*,
581 F. Supp. 878 (N.D. Cal. 1984) ........................................................................................ 12

*Monroe v. Hughes*,
31 F.3d 772 (9th Cir. 1994) ..................................................................................................... 6

*Ponce v. SEC*,
345 F.3d 722 (9th Cir. 2003) ................................................................................................. 13

*Rieckborn v. Jefferies LLC*,
81 F. Supp. 3d 902 (N.D. Cal. 2015) ..................................................................................... 12

*Scheuer v. Rhodes*,
416 U.S. 232 (1974), *overruled on other grounds*, *Davis v. Sherer*, 468 U.S. 183 (1984) .............. 7

*Scott v. ZST Digit. Networks, Inc.*,
2012 WL 538279 (C.D. Cal. Feb. 14, 2012)........................................................................... 10

*Siaperas v. Mont. State Comp. Ins. Fund*,
480 F.3d 1001 (9th Cir. 2007) ................................................................................................. 7

*Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.*,
243 F. Supp. 3d 1109 (E.D. Cal. 2017).............................................................................. 11, 12

PLAINTIFF'S OPPOSITION TO THE DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS PLAINTIFF'S SECTION 11 CAUSE OF ACTION

iv

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ............................................................................................................... 7

**Statutes**

15 U.S.C. § 77aa ........................................................................................................................ 11

15 U.S.C. § 77k ..................................................................................................................*passim*

Private Securities Litigation Reform Act of 1995 ..................................................................... 7

**Rules**

Fed. R. Civ. P. 12 .................................................................................................................. 7, 13

## I.    PRELIMINARY STATEMENT

In its April 2023 IPO, China-based amusement park company Golden Heaven Group Holdings Ltd. ("Golden Heaven" or the "Company") lauded the array of the "quality" and "innovat[ive]" rides and attractions operated by a large team of capable personnel drawing droves of guests in the millions for the three years of its operation—thus providing robust revenue *in the tens of millions*.  But the truth revealed that these representations were a classic "China hustle"; in reality, two independent investigations confirmed the parks were ill-maintained "dystopian hellscapes," attracting a small fraction of their reported capacity—and for some, no visitors at all.  Given that Golden Heaven's sole source of revenue is income from park attendance, those reported revenue figures were false.  What is more—and not shocking given the sad state of the parks—investigators saw little to no Golden Heaven employees operating these rides.  As confirmed by social employment filings in China, the registration statement also gave false numbers about the Company's number of employees.

Defendant BF Borgers CPA PC ("Borgers CPA") does not (and cannot) dispute the falsity of these representations.

As the auditor for the IPO, Borgers CPA was the gatekeeper responsible for ensuring the financial statements in the registration statement were accurate.  Given the magnitude of this obvious fraud, Borgers CPA wholly abdicated that role when it prepared and certified these false statements.  Tellingly, Borgers CPA does not even attempt to argue otherwise.  Borgers CPA instead tries to dodge liability by wrongly claiming that it did not "make" or "certify" any of those statements, a facile contention courts handily reject.  Nor can Borgers CPA escape accountability on standing grounds; the AC pleads Plaintiff bought his shares pursuant to the only registration statement offering these securities in the U.S. markets.  These arguments are just the latest attempt to evade responsibility:  Indeed, Borgers CPA repeatedly dodged attempts at service, forcing Plaintiff to file a motion for alternative service to secure his day in court.   ECF Nos. 81, 84.  That the SEC has now shut down "sham audit mill" Borgers CPA *permanently* for orchestrating "one of the largest wholesale failures by gatekeepers in our financial markets" is a comfort to future IPO investors, but not to Plaintiff, who greatly suffered

PLAINTIFF'S OPPOSITION TO THE DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS PLAINTIFF'S SECTION 11 CAUSE OF ACTION

1

from relying on Borgers CPA's certifications and audit report.  The Court must deny Borgers CPA's motion.

## II.    STATEMENT OF FACTS[1]

### A. China-Based Amusement Park Company, Golden Heaven, Solicits U.S. Markets in An IPO Based On Financials in the Registration Statement and Audit Report Prepared and Certified By Borgers CPA.

Founded in 2020 and headquartered in China, Golden Heaven is a Cayman Islands holding company that "manages and operates" six amusement parks in southern China.  AC¶180.  Golden Heaven generates its revenue solely from those six amusement parks, and guest attendance at those parks accounts for over 90% of that revenue.  AC¶¶213, 221.

In 2023, Golden Heaven set its sights on the U.S. markets for an influx of cash in an upcoming April 2023 IPO valued at $200 million USD.  AC¶181, 214.  In the offering documents, Golden Heaven boasted about and the "quality" of its innovative rides and attractions drawing those guests (AC¶¶221-224) and assured the market about the safety and condition of the rides and attractions (AC¶223), as well as the robust team of employees ensuring the continued quality of those attractions and guest experience (AC¶224).

Golden Heaven also promoted the strong numbers of park guests and revenue.  AC¶221.  For the fiscal years ending in September 2021 and 2022 respectively, "the number of guest visits at the parks totaled approximately 2.40 million and 2.41," and "revenue … remained largely stable over the years," accruing $38,517,742 in 2021 and $41,788,19 in 2022.  AC¶¶221, 220.  This revenue from "guest spending on rides and attractions" "accounted for 97.17% and 94.23% of the total revenue, respectively."  AC¶221.

---

[1] All "AC¶__" references are to the Amended Consolidated Complaint for Violations of The Federal Securities Laws ("AC"), filed July 16, 2024 (ECF No. 63).  "MTD" refers to the Memorandum of Points and Authorities in Support of Defendant BF Borgers CPA PC's Motion to Dismiss (ECF No. 93-1).  Unless otherwise indicated, all emphasis is added, and all citations, internal quotation marks, and footnotes are omitted.

PLAINTIFF'S OPPOSITION TO THE DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS PLAINTIFF'S SECTION 11 CAUSE OF ACTION

Borgers CPA certified the financial statements in the offering documents. Borgers CPA was Golden Heaven's "authorized accounting firm that audited Golden Heaven's financials for the Golden Heaven IPO, issued the audit report for the IPO, and signed the Registration Statement." AC¶209. As the Prospectus stated, Golden Heaven's "consolidated financial statements . . . have been included herein and in the registration statement in reliance upon the report of BF Borgers CPA PC, an independent registered public accounting firm, given on the authority of said firm as experts in auditing and accounting." AC¶209.

The audit report prepared by Borgers CPA assured investors of the accuracy of the Company's financial and operational representations in the registration statement. AC¶209. It stated that the "audit included performing procedures to assess the risks of material misstatement of the financial statements, whether due to error or fraud, and performing procedures that respond to those risks," with "[s]uch procedures includ[ing] examining, on a test basis, evidence regarding the amounts and disclosures in the financial statements." AC¶209. According to that report, the Borgers CPA audit "also included evaluating the accounting principles used and significant estimates made by management, as well as evaluating the overall presentation of the financial statements." AC¶209. This audit "provid[ed] a reasonable basis for [Borgers CPA's] opinion" that "the financial statements present fairly, in all material respects, the financial position of the Company . . . and the results of its operations and its cash flows for the years then ended, in conformity with accounting principles generally accepted in the United States." AC¶209.

**B.     Golden Heaven**'s **Registration Statement Misstated Every Key Metric of the Operating Business, Including Attendance and Revenue.**

Unknown to U.S. investors, Golden Heaven's registration statement misrepresented every key aspect of the Company's business. While the Company repeatedly praised the quality and condition of its attractions and maintenance (*e.g.*, AC¶¶222-225, 218-226), in both November 2023 and June 2024, two different investigative teams visited each park and discovered the truth—that the parks were either

PLAINTIFF'S OPPOSITION TO THE DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS PLAINTIFF'S SECTION 11 CAUSE OF ACTION

3

nearly or completely deserted, resembled "dystopian hellscapes," and that the attractions were in various states of disrepair (*e.g.*, AC¶¶182, 228, 299).  Moreover, they found close to *no* employees were managing or operating these rides, nor maintaining them (*e.g.*, AC¶¶228, 296-341) and, based on data from China's social endowment office, Golden Heaven also affirmatively misrepresented the number of employees hired by *as much* as *367%* (AC¶265).  Given this reality, it is not surprising that Golden Heaven also inflated the number of park guests and thus revenue, which is derived solely from guest attendance.  AC¶¶227, 221.  The reported attendance numbers, when divided by 365 day per year, *exceed the daily maximum park capacity by more than double*.  *E.g.*, AC¶¶227, 246-255.  And, while the IPO valued Golden Heaven at $200 million dollars, a related entity controlled by Defendant Jin had sold all six parks to the Company for only $7.5 million a year earlier.  AC¶229.

## C.    The Truth Emerges.

On November 13, 2023, Hindenburg Research ("Hindenburg") posted on X.com ("Twitter") revealing Golden Heaven as "Another Classic 'China Hustle'" using an IPO in the U.S. markets to cheat foreign investors.  AC¶296.  While investigative teams "visited each park, on the weekend, typically when amusement parks are busiest, expecting to find vibrant and heavily trafficked parks as suggested in the [C]ompany's investor materials," they uncovered that Golden Heaven's "claimed high-tech parks appear to be dystopian hellscapes" (AC¶¶299, 301), with broken-down, dirty attractions, and largely devoid of park guests or employees (AC¶¶303-309).  (Plaintiff's own investigative team confirmed these findings in an independent investigation conducted in June 2024, AC¶¶321-341.)  On this news, share price declined by 27.9%.  AC¶311.

On November 16, 2023, Golden Heaven issued a denial, decrying Hindenburg's conclusions as "scare tactics" riddled with "factual errors" with "numerous inflammatory and misleading statements," and promised to "rebut[]" those "false claims," but the Company did not provide the meaningful "rebutta[l]" as promised.  AC¶¶312-314.  Shares declined 88.99%.  AC¶318.

PLAINTIFF'S OPPOSITION TO THE DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS PLAINTIFF'S SECTION 11 CAUSE OF ACTION

4

On December 8, 2023, Bloomberg published an article about Hindenburg's findings, Golden Heaven's lack of response, and related how "the Nasdaq exchange is littered with dozens of obvious China-based scams," "lur[ing] in unsuspecting U.S. retail investors … then exit[ing] through the kind of 'rug pull' decline we are seeing with Golden Heaven." AC¶319. On this news, shares declined another 41.38%. AC¶320.

**D.     The SEC Shuts Down Borgers CPA Permanently Due to Its Massive Fraud Affecting More Than 1,500 SEC Filings.**

On May 3, 2024, the SEC charged audit firm BF Borgers CPA PC and its owner, Benjamin F. Borgers "with deliberate and systemic failures to comply with Public Company Accounting Oversight Board (PCAOB) standards in its audits and reviews incorporated in more than 1,500 SEC filings from January 2021 through June 2023." AC¶235 (citing SEC Press Release, "SEC Charges Audit Firm BF Borgers and Its Owner with Massive Fraud Affecting More Than 1,500 SEC Filings" (May 3, 2024)). "The SEC also charged the [the firm and founder] with falsely representing to their clients that the firm's work would comply with PCAOB standards," "fabricating audit documentation to make it appear that the firm's work did comply with PCAOB standards," and "falsely stating in audit reports included in more than 500 public company SEC filings that the firm's audits complied with PCAOB standards." AC¶235.

As the Director of the SEC's Division of Enforcement stated, "Ben Borgers and his audit firm, BF Borgers, were responsible for one of the largest wholesale failures by gatekeepers in our financial markets," and "[a]s a result of their fraudulent conduct, they not only put investors and markets at risk by causing public companies to incorporate noncompliant audits and reviews into more than 1,500 filings with the Commission, but also undermined trust and confidence in our markets." AC¶236. This is particularly important, the Director went on, "[b]ecause investors rely on the audited financial statements of public companies when making their investment decisions, the accountants and accounting firms that audit those statements play a critical role in our financial markets," and "Borgers and his firm

PLAINTIFF'S OPPOSITION TO THE DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS PLAINTIFF'S SECTION 11 CAUSE OF ACTION

5

completely abandoned that role, but thanks to the painstaking work of the SEC staff, Borgers and his sham audit mill have been permanently shut down."  AC¶236.

### III.    ARGUMENT

**A.  The AC Pleads Violations of Section 11 Of The Securities Act Against Borgers CPA.**

#### 1.  Standard To Plead a Section 11 Claim.

Section 11 of the Securities Act provides a private cause of action against issuers, underwriters, and *accountants* involved in any public securities offering made under a registration statement that "contain[s] an untrue statement of a material fact or omit[s] to state a material fact required to be stated therein or necessary to make the statements therein not misleading."  15 U.S.C. § 77k(a).  This statute imposes a "stringent standard of liability," that is "virtually absolute, even for innocent misstatements." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381-82 (1983); *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1170 n.47 (C.D. Cal. 2008) ("Section 11 is a harsh, nearly strict-liability rule designed to make sure those involved in securities offerings meticulously prepare the registration statement.").

It is well settled that fraud is not an element of a Section 11 claim, nor are plaintiffs required to allege any sort of intentional, knowing, or reckless misconduct.  *See Huddleston*, 459 U.S. at 383; *In re Daou Sys.*, 411 F.3d 1006, 1027 (9th Cir. 2005), *abrogated on other grounds by Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011), *as recognized by Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 766 (9th Cir. 2023).  Nor does a Section 11 plaintiff need to plead scienter, reliance or loss causation. *Daou*, 411 F.3d at 1027.  And, with regard to auditors like Borgers CPA, the Ninth Circuit has held that Section 11 "imposes a *negligence* standard for an *accountant's liability*." *Monroe v. Hughes*, 31 F.3d 772, 774 (9th Cir. 1994) (c*iting Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 208 (1976)).

To state a claim for relief under Section 11, plaintiffs need only plead that: (1) they acquired a security pursuant to a registration statement; (2) that contained an untrue statement or omission of fact;

and (3) that the untrue statement or fact omitted was material.  15 U.S.C. § 77k(a); *see also Huddleston*, 459 U.S. at 382.  Accordingly, plaintiffs "need only show a material misstatement or omission to establish [a] prima facie case," which is "a relatively minimal burden."  *Huddleston*, 459 U.S. at 382.

As Borgers CPA acknowledges (MTD at 7), such Section 11 claims "are not governed by the heightened pleading standards of the [Private Securities Litigation Reform Act of 1995 ("PSLRA")]." *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1133 (9th Cir. 2002), *abrogated on other grounds by Kircher v. Putnam Funds Tr.*, 547 U.S. 633 (2006), *as recognized in Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1219 (9th Cir. 2009).  Rather, Section 11 requires only a short and plain statement of the claim under Rule 8(a), showing that the pleader is entitled to relief. *See In re DDi Corp. Sec. Litig.*, 2005 WL 3090882, at *12 (C.D. Cal. July 21, 2005).  "[W]here fraud is not an essential element of a claim . . . . '[a]llegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a).'"  *Daou*, 411 F.3d at 1027 (*quoting Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1102, 1105 (9th Cir. 2003); *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 319-20 (2007) (heightened pleading standard applied only to element of scienter).

When considering a motion under Fed. R. Civ. P. 12(b)(6), the Ninth Circuit has held that the liberal notice pleading standard under Rule 8(a) establishes "a powerful presumption against rejecting pleadings for failure to state a claim."  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). At this stage of the litigation, the question is not whether a plaintiff will prevail in the action, but whether it is entitled to offer evidence in support of its claim.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds*, *Davis v. Sherer*, 468 U.S. 183, 188-91 (1984); *Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir. 1997).  Dismissal is proper "only when there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory."  *Siaperas v. Mont. State Comp. Ins. Fund*, 480 F.3d 1001, 1003 (9th Cir. 2007).

The AC's allegations give Borgers CPA ample and fair notice of the Section 11 claim against it and the grounds upon which the claims rest and provides "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

PLAINTIFF'S OPPOSITION TO THE DEFENDANT BF BORGERS CPA PC'S MOTION TO
DISMISS PLAINTIFF'S SECTION 11 CAUSE OF ACTION

7

**B. Borgers CPA Is Liable Under Section 11 For Golden Heaven's Materially Misstated Certified Financial Statements and Audit Report in the Registration Statement.**

**1. Golden Heaven's Certified Financial Statements and Audit Report Were Material and Were Misstated in The Registration Statement.**

Borgers CPA does not contest that Plaintiff alleges that Golden Heaven's certified financial statements incorporated into the registration statement were false. Rather, according to Borgers CPA, "[t]o be clear, BF Borgers isn't arguing that Plaintiff's allegations of falsity are inadequate—Plaintiff makes no specific allegations of falsity at all." MTD at 10. That ignores the well plead allegations that Golden Heaven's consolidated financial statements (certified by Borgers CPA, *infra* I.B.2), were false, misleading, and omitted material information about the most essential aspects of Golden Heaven's business.

Most obviously, those financial statements misstated Golden Heaven's revenue and net income. The AC alleges how Golden Heaven's amusements parks were sham operations with inoperable rides, drawing in little to no park guests—and thus no revenue. Indeed, as the AC makes clear, "[t]he [park guests] numbers are important because, as the Prospectus noted, Golden Heaven's main revenue source (by far) is from park admittance." AC¶221. As the Company stated, "[o]ur revenue is primarily generated from selling access to rides and attractions," and "revenue and net income have remained largely stable over the years. Indeed, '[i]n the fiscal years ended September 30, 2021, and 2022, our revenue was US$38,517,742 and US$41,788,19, respectively. For the same fiscal years, our net income was US$13,580,375 and US$14,328,374, respectively, and the number of guest visits at the parks totaled approximately 2.40 million and 2.41 million, respectively.' This revenue from 'guest spending on rides and attractions' 'accounted for 97.17% and 94.23% of the total revenue, respectively.'" AC¶221. Of course, as the AC goes on, "[u]nbeknownst to U.S. investors, Golden Heaven grossly overstated its prospects for current and future revenue." AC¶227. "Critically, Defendants misrepresented the number of park guests attending the parks each year—many of the cited valuation figures of attendance, when divided by 365 day per year, exceed the daily maximum park capacity" (AC¶227, ¶¶246-255), and "[a]s

PLAINTIFF'S OPPOSITION TO THE DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS PLAINTIFF'S SECTION 11 CAUSE OF ACTION

8

Golden Heaven's revenue depends almost entirely on park attendance, Golden Heaven also must be misstating its stated revenue" (AC¶227).

Under the heading, "Materially False and Misleading Statements For the Securities Act Claims," the AC specifically lists these revenue metrics as false (AC¶¶258-59), noting that "[t]hese statements … were materially false and misleading because (1) the [Company's] 'operating entities' do not 'generate significant revenue from guest spending on rides and attractions' close to 'US$30,115,995, US$39,377,906 and US$37,427,388,' given guest attendance is the main form of revenue and, as stated above, the parks are nearly empty, and (2) many of the Company's parks are in generally poor condition and do not attract high levels of attendance." *E.g.*, AC¶260; AC¶278 ("[T]he MD&A disclosures in Golden Heaven's Registration Statement it filed with the SEC … were materially false and misleading because Defendants failed to disclose the known uncertainties and risks associated with: (1) the low level of park attendance, (2) *the accuracy of Golden Heaven's figures regarding park attendance and revenue*, (3) the true, poor condition of Golden Heaven's rides and attractions.").

Indeed, the Ninth Circuit has recognized that the "overstating of revenues may state a claim for securities fraud, as under GAAP [generally accepted accounting principles], revenue must be earned before it can be recognized." *Daou*, 411 F.3d at 1016. "[F]inancial statements that are not prepared in conformity with GAAP are presumed to be misleading and inaccurate." *Goldstein v. MCI WorldCom*, 340 F.3d 238, 249 (5th Cir. 2003) (citing SEC Regulation S-X (17 C.F.R. § 210.4-01(a)(1))); *In re Adaptive Broadband Sec. Litig.*, 2002 WL 989478, at *12 (N.D. Cal. Apr. 2, 2002) (similar). Thus, as the AC alleges, Borgers CPA was "responsible for the contents … of the Registration Statement" but failed to "ma[ke] a reasonable investigation or possess[] reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not inaccurate." AC¶353.

The AC also alleges material misstatements regarding the number of personnel. AC¶262. While the registration statement professed that "[i]n the fiscal years ended September 30, 2020, 2021, and 2022, [Golden Heaven] collectively hired 607, 610, and 617 full-time employees, respectively"

PLAINTIFF'S OPPOSITION TO THE DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS PLAINTIFF'S SECTION 11 CAUSE OF ACTION

9

(AC¶262), that was "false and misleading because, based on the information obtained by Tianyancha.com (a Chinese database with information on public companies) regarding the employees enrolled in basic social endowment insurance as disclosed by Golden Heaven and its six respective subsidiaries in their annual reports, the employee counts in the Offering Documents were dramatically inflated" by as much as "367%" (AC¶265). Such vast disparities between disclosures in the U.S. versus Chinese filings have formed the basis for alleging falsity—and further support the inference that Borgers CPA failed to do any diligence when assessing key metrics of Golden Heaven's business. AC¶353; *e.g.*, *Henning v. Orient Paper, Inc.*, 2011 WL 2909322, at \*4-5 (C.D. Cal. July 20, 2011); *In re China Educ. All., Inc. Sec. Litig.*, 2011 WL 4978483, at \*5 (C.D. Cal. Oct. 11, 2011); *Dean v. China Agritech, Inc.*, 2011 WL 5148598, at \*4 (C.D. Cal. Oct. 27, 2011); *Scott v. ZST Digit. Networks, Inc.*, 2012 WL 538279, at \*1-4, \*9 (C.D. Cal. Feb. 14, 2012).

### 2. Borgers CPA Is Liable For Certifying The Material Misstatements In The Financial Statements and Its Audit Report.

Borgers CPA is liable under Section 11 for the false and misleading statements of fact in Golden Heaven's "consolidated financial statements" that Borgers CPA audited and certified as accurate in the registration statement. AC¶209.

Borgers CPA's primary contention is that "there are no allegations that [any false] … statements were prepared or certified by BF Borgers." *E.g.*, MTD at 10. This misstates the law. Section 11 provides that if a registration statement contains a false statement or omission, liability will lie against:

> every ***accountant*** . . . who has with his consent been named as ***having prepared or certified any part*** of the registration statement, or as having prepared or certified ***any report or valuation which is used in connection with the registration statement***, with respect to the statement in such registration statement, report, or valuation, which purports to have been prepared or certified by him.

15 U.S.C. § 77k(a)(4). This "was designed to assure compliance with the disclosure provisions of the Act by imposing a stringent standard of liability on the parties who play a direct role in a registered

PLAINTIFF'S OPPOSITION TO THE DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS PLAINTIFF'S SECTION 11 CAUSE OF ACTION

10

offering," *Huddleston*, 459 U.S. at 381-82 (citing H.R. Rep. No. 85, 73d Cong., 1st Sess. 9 (1933)), and "reflects Congress' sense that … accountants bear a 'moral responsibility to the public [that] is particularly heavy,'" *In re Wachovia Equity Sec. Litig*., 753 F. Supp. 2d 326, 378-79 (S.D.N.Y. 2011) (*quoting In re WorldCom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 657 (S.D.N.Y .2004)).

Authorities interpreting the plain language of Section 11(a)(4) provide that an auditor that consents to serve as an accounting expert in a registration statement is liable under Section 11 for the misstatements of material fact contained in the financial statements included in that registration statement. *Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.*, 243 F. Supp. 3d 1109, 1115 (E.D. Cal. 2017); *In re Lehman Bros. Sec. & Erisa Litig.*, 131 F. Supp. 3d 241, 259-60 (S.D.N.Y. 2015) (a clean audit opinion regarding the financial statements in a registration statement served to "certify" those financial statements, and subjected the auditor to Section 11 liability for the *false statements made by Lehman* in the financial statements); *In re OSG Sec. Litig.*, 971 F. Supp. 2d 387, 400 n.87 (S.D.N.Y. 2013) (collecting cases and finding that "[c]ourts in this district have consistently found that accountants bear Section 11 liability for the portions of a Registration Statement that they audited"). A registration statement is *required by statute* to include financial statements (both a balance sheet and an income statement) that have been "certified by an independent public or certified accountant." 15 U.S.C. § 77aa(25), (26).

The only report in the registration statement from an independent or certified accountant regarding the consolidated financial statements is Borgers CPA's audit report. AC¶209. Courts recognized that "[t]he necessary implication is, of course, that [Borgers CPA's] audit report certified the disputed financial statements." *Marrone Bio*, 243 F. Supp. 3d at 1117. "'It is difficult to imagine what Congress might have meant by an accountant's certification if not an audit affirming the accuracy of the documents in question.'" *Id*. (quoting *Lehman*, 131 F. Supp. 3d at 260).

Because Borgers CPA audited the consolidated financials in the registration statement, it certified those statements and is liable under Section 11 for the false statements in Golden Heaven's financial statements contained in the registration statement. AC¶209. This is sufficient to plead a *prima*

PLAINTIFF'S OPPOSITION TO THE DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS PLAINTIFF'S SECTION 11 CAUSE OF ACTION

*facie* case against Borgers CPA. *See Huddleston*, 459 U.S. at 381 n.11 (auditors are liable for "matters which purport to have been prepared or certified by them"); *In re WorldCom, Inc. Sec. Litig.*, 352 F. Supp. 2d 472, 492 (S.D.N.Y. 2005) ("[A]n accountant has responsibility under Section 11 for the accuracy of the financial statements she certifies."). Because Section 11 holds auditors liable for false statements that they certify, courts routinely hold that auditors' Section 11 liability is coextensive with the falsity of the underlying statements certified by them. *See, e.g.*, *Marrone Bio*, 243 F. Supp. 3d a 1115; *In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*, 259 F.R.D. 490, 505, 509 (W.D. Wash. 2009) (upholding Section 11 claims against auditor Deloitte for "material misrepresentations by [Washington Mutual] that appear in those portions of the Offering Documents that Deloitte certified"); *Wachovia*, 753 F. Supp. 2d at 378-79 (sustaining Section 11 claims against auditor based on allegations that the defendant company's financial statements audited by the auditor and the audit reports were materially false and misleading); *In re Glob. Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 348 (S.D.N.Y. 2004) (upholding §11 claim against an auditor based on its certification of the defendant-company's false financial statements).[2]

Borgers CPA is also liable for the false statements in its audit report included in the registration statement that "the financial statements present fairly, in all material respects, the financial position of the Company . . . and the results of its operations and its cash flows for the years then ended, in conformity with accounting principles generally accepted in the United States." AC¶209. As courts have held, such an "affirmation that the financial statements were presented 'in conformity with

---

[2] Borgers CPA's authorities are not to the contrary. In *McFarland v. Memorex Corp.*, 493 F. Supp. 631, 643 (N.D. Cal. 1980), *reconsideration granted on other grounds*, 581 F. Supp. 878 (N.D. Cal. 1984), the complaint alleged that "the accountants … named in the registration statement … prepared or certified only the consolidated financial statements for the years 1974 through 1977," but not "the 1978 financial information" at issue. Similarly, in *Rieckborn v. Jefferies LLC*, 81 F. Supp. 3d 902, 924 (N.D. Cal. 2015), "plaintiffs ha[d] not alleged that [the issuer's] … figures were included in the financial statements that were the subject of [the] audit reports." Here, the only report in the registration statement from an independent or certified accountant regarding the consolidated financial statements is Borgers CPA's audit report. *In re Worlds of Wonder Sec. Litig.*, 694 F. Supp. 1427, 1434 (N.D. Cal. 1988) is even farther off the mark because there plaintiffs "fail[ed] to designate why [the] statement was fraudulent" and "[t]he fraudulent nature of the[] statements … [was] not self-evident," whereas here, the fraud is obvious.

PLAINTIFF'S OPPOSITION TO THE DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS PLAINTIFF'S SECTION 11 CAUSE OF ACTION

accounting principles generally accepted in the United States of America' is an actionable statement of fact," "[a]nd as Plaintiff[] ha[s] set forth, this was false because the financial statements were not prepared in conformity with GAAP, given the improper" overinflation of revenue, net income, and personnel. *In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*, 694 F. Supp. 2d 1192, 1223-24 (W.D. Wash. 2009).[3]

Finally, while an auditor certifying false financial statements included in the registration statement is provided a "due diligence" affirmative defense, that is not appropriately considered in a motion to dismiss. *See* 15 U.S.C. § 77k(b); *In re Velti PLC Sec. Litig.*, 2015 WL 5736589, at *12 (N.D. Cal. Oct. 1, 2015) ("In most cases, due diligence is a jury question unsuitable for determination on a motion to dismiss."); *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 n.7 (2d Cir. 2010) ("Generally speaking, defendants bear the burden of demonstrating the applicability of each of these defenses, which are therefore unavailing as a means of defeating a motion to dismiss pursuant to Rule 12(b)(6)."). Given the glaring nature of the fraud here, it is not surprising that Borgers CPA has not asserted a "due diligence" defense. Accordingly, Borgers CPA's motion to dismiss must fail because Plaintiff demonstrates that the registration statement contained material misstatements or omissions.

## C. The AC Adequately Pleads Plaintiff's Section 11 Standing.

Section 11 provides a cause of action to any person who buys a security issued pursuant to or traceable to a materially false or misleading registration statement. *See Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076, 1079-82 (9th Cir. 1999). As Defendants' own cited authority holds (MTD at 8), a "Plaintiff[] need not have purchased shares in the offering made under the misleading registration statement; those who purchased shares in the aftermarket have standing to sue provided they can trace

---

[3] Courts routinely hold that auditors are liable for false claims to have complied with general accounting standards. *See, e.g.*, *Ponce v. SEC*, 345 F.3d 722, 729-30 (9th Cir. 2003); *In re WorldCom, Inc. Sec. Litig.*, 352 F. Supp. 2d 472, 494 (S.D.N.Y. 2005); *Holmes v. Baker*, 166 F. Supp. 2d 1362, 1375-76 (S.D. Fla. 2001); *Kinney v. Metro Glob. Media, Inc.*, 170 F. Supp. 2d 173, 177 (D.R.I. 2001); *In re Cendant Corp. Litig.*, 60 F. Supp. 2d 354, 361, 364 (D.N.J. 1999).

PLAINTIFF'S OPPOSITION TO THE DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS PLAINTIFF'S SECTION 11 CAUSE OF ACTION

13

their shares back to the relevant offering." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1106 (9th Cir. 2013). Rather, "[w]hen all of a company's shares have been issued in a single offering under the same registration statement, this 'tracing' requirement generally poses no obstacle." *Id.*

The AC alleges that Plaintiff purchased or otherwise acquired Golden Heaven common stock "pursuant and/or traceable to the Registration Statement issued in connection with the [Company's] IPO." AC¶342. While Borgers CPA points to alleged shares "outstanding" at the time of the IPO (MTD at 8 n.5), the AC alleges Golden Heaven issued these same shares in a single offering under one registration statement. Defendants do not point to any other registration statement from which shares could have come into the market, nor offer evidence that unregistered shares came into the market. Statutory standing is thus adequately pled, particularly given the lenient Rule 8(a) standards applicable here. *In re Mun. Mortg. & Equity, LLC, Sec. & Derivative Litig.*, 876 F. Supp. 2d 616, 658-59 (D. Md. 2012) (allegation that plaintiff purchased his shares "pursuant to, or traceable to, the SPO registration statement and prospectus" sufficient after *Twombly* and *Iqbal*), *aff'd sub nom. Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874 (4th Cir. 2024); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 401, 403-04 (D. Md. 2004) (allegation that "Lead Plaintiff … purchased … common stock … pursuant to the registration and prospectus" "sufficient to state a §11 claim"); *see also In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1039 (S.D. Cal. 2005) (allegation that plaintiffs "purchased or otherwise acquired IRC shares pursuant to the defective Registration Statement and Prospectus . . . sufficient grounds for a presumption of standing"); *In re SeeBeyond Techs. Corp. Sec. Litig.*, 266 F. Supp. 2d 1150, 1171 (C.D. Cal. 2003) (allegation that "plaintiff 'represents a class whose purchases are traceable to the Offering'" sufficient). These allegations need "not prove their standing to a certainty," but must simply be "plausible." *In re Ubiquiti Networks, Inc. Sec. Litig.*, 33 F. Supp. 3d 1107, 1119 (N.D. Cal. 2014), *aff'd in part, rev'd in part on other grounds*, 669 F. App'x 878 (9th Cir. 2016). "[W]hether the plaintiff is able to trace its stock is not a question that can be resolved on this motion." *SeeBeyond*, 266 F. Supp. 2d at 1171-72.

PLAINTIFF'S OPPOSITION TO THE DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS PLAINTIFF'S SECTION 11 CAUSE OF ACTION

14

## IV.    CONCLUSION

Defendant's motion should be denied. Alternatively, Plaintiff requests leave to amend to cure any deficiencies. *Cisneros v. Allianz Life Ins. of N. Am.*, 2019 WL 9656383, at *4 (N.D. Cal. Dec. 2, 2019).

Dated: February 13, 2025                    Respectfully submitted,

                                            **POMERANTZ LLP**

                                            */s/ Samantha Daniels*
                                            Samantha Daniels (admitted *pro hac vice)*
                                            Jennifer Pafiti (SBN 282790)
                                            1100 Glendon Avenue, 15th Floor
                                            Los Angeles, California 90024
                                            Telephone: 9212) 661-1100
                                            (310) 405-7190
                                            sdaniels@pomlaw.com
                                            jpafiti@pomlaw.com

                                            J. Alexander Hood II
                                            (admitted *pro hac vice*)
                                            600 Third Avenue, 20th Floor
                                            New York, New York 10016
                                            Telephone: (212) 661-1100
                                            Facsimile: (917) 463-1044
                                            ahood@pomlaw.com

                                            *Counsel for Plaintiff*

                                            BRONSTEIN, GEWIRTZ &
                                            GROSSMAN, LLC
                                            Peretz Bronstein
                                            (*pro hac vice* application forthcoming)
                                            60 East 42nd Street, Suite 4600
                                            New York, New York 10165
                                            Telephone: (212) 697-6484
                                            Facsimile: (212) 697-7296
                                            peretz@bgandg.com

                                            *Additional Counsel for Plaintiff*

PLAINTIFF'S OPPOSITION TO THE DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS PLAINTIFF'S SECTION 11 CAUSE OF ACTION

15

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 5,360 words, which complies with the word limit of L.R. 11-6.1.

February 13, 2025

_/s/ Samantha Daniels_____
Samantha Daniels

PLAINTIFF'S OPPOSITION TO THE DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS PLAINTIFF'S SECTION 11 CAUSE OF ACTION

1