# EXHIBIT 1

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| FIYYAZ PIRANI, | No. 20-16419 |
| *Plaintiff-Appellee*, | D.C. No. 3:19-cv-05857-SI |
| v. | |
| SLACK TECHNOLOGIES, INC.; STEWART BUTTERFIELD; ALLEN SHIM; BRANDON ZELL; ANDREW BRACCIA; EDITH COOPER; SARAH FRIAR; JOHN O'FARRELL; CHAMATH PALIHAPITIYA; GRAHAM SMITH; SOCIAL+CAPITAL PARTNERSHIP GP II L.P.; SOCIAL+CAPITAL PARTNERSHIP GP II LTD.; SOCIAL+CAPITAL PARTNERSHIP GP III L.P.; SOCIAL+CAPITAL PARTNERSHIP GP III LTD.; SOCIAL+CAPITAL PARTNERSHIP OPPORTUNITIES FUND GP L.P.; SOCIAL+CAPITAL PARTNERSHIP OPPORTUNITIES FUND GP LTD.; ACCEL GROWTH FUND IV ASSOCIATES L.L.C.; ACCEL GROWTH FUND INVESTORS 2016 L.L.C.; ACCEL LEADERS FUND ASSOCIATES L.L.C.; ACCEL | OPINION |

2          PIRANI V. SLACK TECHNOLOGIES, INC.

LEADERS FUND INVESTORS 2016
L.L.C.; ACCEL X ASSOCIATES
L.L.C.; ACCEL INVESTORS 2009
L.L.C.; ACCEL XI ASSOCIATES
L.L.C.; ACCEL INVESTORS 2013
L.L.C.; ACCEL GROWTH FUND III
ASSOCIATES L.L.C.; AH EQUITY
PARTNERS I L.L.C.; A16Z SEED-III
LLC,

          *Defendants-Appellants*.

On Remand from the United States Supreme Court

Filed February 10, 2025

Before: Sidney R. Thomas and Eric D. Miller, Circuit
Judges, and Jane A. Restani,[*] Judge.

Opinion by Judge Miller

---

[*] The Honorable Jane A. Restani, Judge for the United States Court of
International Trade, sitting by designation.

## SUMMARY[**]

### Securities Fraud

On remand from the United States Supreme Court, the panel reversed the district court's denial of defendants' motion to dismiss an action under sections 11 and 12(a)(2) of the Securities Act of 1933.

Sections 11 and 12(a)(2) impose strict liability for any untrue statement or omission of a material fact in a registration statement or prospectus, respectively. Section 11 gives a cause of action only to a "person acquiring such security," while section 12(a)(2) similarly gives a cause of action only "to the person purchasing such security." Defendant Slack Technologies, Inc., went public through a direct listing, which differed from an initial public offering in that the company listed already-issued shares rather than issuing new shares.

In *Slack Techs., LLC v. Pirani*, 598 U.S. 759 (2023), the Supreme Court vacated this court's affirmance of the district court's order and held that section 11 requires plaintiffs to show that the securities they purchased were traceable to the particular registration statement alleged to be false or misleading. The panel concluded that section 12(a)(2) requires the same showing.

Because the plaintiff previously conceded that he could not make the required showing of traceability, all of his claims failed. The panel therefore reversed and remanded

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

with instructions to dismiss the complaint in full and with prejudice.

## COUNSEL

Lawrence P. Eagel (argued), W. Scott Holleman, and David J. Stone, Bragar Eagel & Squire PC, New York, New York; Melissa A. Fortunato and Marion C. Passmore, Bragar Eagel & Squire PC, San Francisco, California; Kevin K. Russell, Goldstein Russell & Woofter LLC, Washington, D.C.; for Plaintiff-Appellee.

Michael D. Celio (argued), Gibson Dunn & Crutcher LLP, Palo Alto, California; Theodore J. Boutrous Jr., Matt A. Getz, and Daniel R. Adler, Gibson Dunn & Crutcher LLP, Los Angeles, California; Thomas G. Hungar, Jacob T. Spencer, and Jason H. Hilborn, Gibson Dunn & Crutcher LLP, Washington, D.C.; Matthew S. Kahn, Michael J. Kahn, and Avery E. Masters, Gibson Dunn & Crutcher LLP, San Francisco, California; Defendants-Appellants.

Andrew B. Clubok, Latham & Watkins LLP, Washington, D.C.; Gavin M. Masuda and Morgan E. Whitworth, Latham & Watkins LLP, San Francisco, California; Gregory Mortenson, Latham & Watkins LLP, New York, New York; Ira D. Hammerman and Kevin M. Carroll, Securities Industry and Financial Markets Association, Washington, D.C.; Jeffrey E. Farrah, National Venture Capital Association, Washington, D.C.; Paul Lettow, Janet Galeria, Daryl Joseffer, and Tara S. Morrissey, United States Chamber Litigation Center; for Amici Curiae Securities Industry and Financial Markets Association, Chamber of Commerce of the United States of America, and National Venture Capital Association.

Jennifer J. Schulp, Ilya Shapiro, and Sam Spiegelman, Cato Institute, Washington, D.C., for Amicus Curiae Cato Institute.

Boris Feldman, Doru Gavril, Drew Liming, and M. Abigail West, Freshfields Bruckhaus Deringer US LLP, Menlo Park, California, for Amicus Curiae Former SEC Commissioner Joseph A. Grundfest.

John Browne, Lauren A. Ormsbee, Jai K. Chandrasekhar, and Benjamin W. Horowitz, Bernstein Litowitz Berger & Grossmann LLP, New York, New York, for Amici Curiae Investors.

## **OPINION**

MILLER, Circuit Judge:

This appeal arises from an action under sections 11 and 12(a)(2) of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77*l*(a)(2). The case returns to us from the United States Supreme Court, which vacated our prior decision affirming the district court's denial of a motion to dismiss the complaint. The Court held that section 11 requires plaintiffs to show that the securities they purchased were registered under a materially misleading registration statement. Because the plaintiff previously conceded that he cannot make such a showing, and because we conclude that section 12(a)(2) requires the same showing, all of the claims in this case fail. We therefore reverse.

I

Sections 11 and 12(a)(2) of the Securities Act of 1933 impose strict liability for any "untrue statement of a material fact or [omission of] a material fact" in a "registration statement" or "prospectus," respectively. 15 U.S.C. §§ 77k(a), 77*l*(a)(2). Section 11 gives a cause of action only to a "person acquiring such security," *id.* § 77k(a), while section 12(a)(2) similarly gives a cause of action only "to the person purchasing such security," *id.* § 77*l*(a). In their limitations on who may sue and their imposition of strict liability, both provisions differ from section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), which allows a broad class of plaintiffs to sue for false statements in connection with the sale of a security, but only if the defendant acted with scienter. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 318–19 (2007); *In re Cloudera, Inc.*, 121 F.4th 1180, 1186 (9th Cir. 2024).

In a traditional initial public offering, a company seeking to offer shares for sale to the public files a registration statement and then sells shares issued under that registration statement. Typically, the investment bank underwriting the offering commits to purchasing the new shares at a predetermined price if they do not otherwise sell. To ensure that the price remains stable as the shares enter the market, the bank insists on what is known as a "lock-up period," during which existing shareholders—such as the company's employees or its early investors, who might hold shares that were issued under an exemption to the requirement that shares be registered before being sold to the public—may not sell their unregistered shares. Anyone purchasing shares on the stock exchange during the lock-up period can therefore be certain that the shares were issued under the registration statement.

In 2018, the Securities and Exchange Commission changed its rules to allow certain companies to go public through a direct listing. *See* Order Granting Accelerated Approval of NYSE Proposed Rule Change Relating to Listing of Companies, 83 Fed. Reg. 5650, 5653–54 (Feb. 2, 2018). A direct listing differs from an initial public offering in that the company does not issue any new shares; it simply lists already-issued shares so that existing shareholders can sell them on the exchange.

On June 20, 2019, Slack Technologies, Inc., went public through a direct listing, with no underwriters and no lock-up period. On the first day of the offering, 118 million registered shares and 165 million unregistered shares were available for purchase on the New York Stock Exchange. That day, Fiyyaz Pirani purchased 30,000 Slack shares.

Following the direct listing, Slack experienced multiple service disruptions and reported disappointing quarterly earnings. By September, its share price had fallen by more than a third from the date of the direct listing. In response, Pirani brought this class action against Slack (as well as its officers, directors, and venture capital fund investors, whom we need not consider separately) on behalf of himself and all other persons who "purchased or otherwise acquired Slack common stock pursuant and/or traceable to the Offering Materials." He asserted claims under sections 11 and 12(a)(2), as well as derivative claims under section 15, 15 U.S.C. § 77o, which makes controlling persons jointly and severally liable for violations of the Securities Act. All of his claims were predicated on the allegation that Slack's registration statement (which included a prospectus) was inaccurate and misleading in various respects.

Slack moved to dismiss the complaint for failure to state a claim, arguing that Pirani's claims failed because he could not establish that he had purchased shares that were sold under the allegedly misleading registration statement. The district court denied the motion in relevant part. The court acknowledged that Pirani "did not and cannot allege that he purchased shares registered under and traceable to Slack's Registration Statement," but it held that such an allegation was unnecessary. Instead, the court concluded, it was sufficient that he alleged that the registration statement was false and that the securities he purchased were "of the same nature as [those] issued pursuant to the registration statement." *Barnes v. Osofsky*, 373 F.2d 269, 271 (2d Cir. 1967). The district court reached the same conclusion as to Pirani's section 12(a)(2) claims against the individual defendants.

The district court certified its order for interlocutory appeal under 28 U.S.C. § 1292(b). We granted Slack's petition to appeal, and we affirmed. *Pirani v. Slack Techs., Inc.*, 13 F.4th 940 (9th Cir. 2021) (*Pirani I*); *see id.* at 950 (Miller, J., dissenting).

The Supreme Court vacated our decision. *Slack Techs., LLC v. Pirani*, 598 U.S. 759 (2023). It noted that section 11 "authorizes an individual to sue for a material misstatement or omission in a registration statement when he has acquired 'such security.'" *Id.* at 766. Based on an examination of the statutory context, the Court concluded that "such security" refers to the security offered in the registration statement, and accordingly that "[t]o bring a claim under § 11, the securities held by the plaintiff must be traceable to the particular registration statement alleged to be false or misleading." *Id.* at 768. The Court remanded, leaving for us "to decide in the first instance on remand" the question

"[w]hether Mr. Pirani's pleadings can satisfy § 11(a) as properly construed." *Id.* at 770. As to section 12(a)(2), the Supreme Court explained that because our section 11 analysis was "flawed," the "best course is to vacate [the] judgment with respect to Mr. Pirani's § 12 claim as well for reconsideration in light of [the Court's] holding . . . about the meaning of § 11." *Id.* at 770 n.3.

## II

We begin with Pirani's section 11 claim. In vacating our decision, the Supreme Court expressly held that "[t]o bring a claim under § 11, the securities held by the plaintiff must be traceable to the particular registration statement alleged to be false or misleading." *Slack Techs., LLC*, 598 U.S. at 768. The dispositive issue, therefore, is whether Pirani sufficiently pleaded that his purchased shares are traceable to Slack's registration statement.

In the operative complaint, Pirani alleged that he "and the other members of the Class acquired Slack common stock pursuant and/or traceable to the Offering Materials." If that were all Pirani said, we would have to decide whether his allegation was sufficient to make the conclusion of traceability a plausible one under the pleading standards articulated by the Supreme Court in *Ashcroft v. Iqbal*, namely, that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). But that is not all he said. Whether or not the complaint would have been adequate on its own, Pirani's subsequent concessions expressly waived any allegation of traceability.

In his opposition to Slack's motion to dismiss, Pirani asserted that "the concept of 'tracing' a share of stock – *i.e.*, establishing a chain of title for a particular share back to the share's original owner – is a concept that no longer exists in today's market and is not possible." The district court accepted that concession, explaining that Pirani "did not and cannot allege that he purchased shares registered under and traceable to Slack's Registration Statement" and concluding that his "inability to trace [is] undisputed."

On appeal, Pirani repeated his concession, arguing that "[b]ecause both registered and unregistered shares would hit the public market at the same time, it would be impossible for any purchasers to trace their shares back to the Registration Statement or Prospectus." That was the basis on which we decided the case: We said that Pirani "cannot prove that his shares were registered under the allegedly misleading registration statement." *Pirani I*, 13 F.4th at 945. And accepting his assertion that purchasers in a direct listing cannot "know if they purchased a registered or unregistered share," we reasoned that "interpreting Section 11 to apply only to registered shares in a direct listing context would essentially eliminate Section 11 liability for misleading or false statements made in a registration statement in a direct listing." *Id.* at 948. When the case reached the Supreme Court, Pirani confirmed that we had correctly understood his position, stating that he had "agreed below that it was impossible to trace his shares to a registration statement." Brief of Respondent at 49, *Slack Techs., LLC*, 598 U.S. 759 (No. 22-200), 2023 WL 2340467, at *49.

Despite his repeated and express concessions, Pirani now maintains that we should not conclude that he waived traceability, and he says that if we were to remand to the district court, he would be able to trace his shares to those

issued under the registration statement. He advances three arguments for that position, but we find none persuasive.

First, Pirani argues that the Supreme Court has instructed us to disregard waiver and to consider the merits of "[w]hether [the] pleadings can satisfy § 11(a) as properly construed." *Slack Techs., LLC*, 598 U.S. at 770. Noting that Slack mentioned waiver in its Supreme Court briefing, he reasons that the Court, in remanding for us to decide whether the "pleadings can satisfy § 11(a)," must have implicitly rejected Slack's arguments about waiver. *Id.*

We are not persuaded that the Court's silence on waiver should be understood as an instruction to disregard that issue. The Supreme Court has repeatedly described itself as "a court of review, not of first view." *Moody v. NetChoice, LLC*, 603 U.S. 707, 726 (2024) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005)). In keeping with that description, it does not ordinarily address issues that were not resolved by the lower courts, including waiver and forfeiture. *See, e.g.*, *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 685–86 (2015). In our prior decision, we did not consider "§ 11(a) as properly construed" (because we adopted a different construction of it), nor did we consider whether Pirani had waived traceability (because our construction of the statute made that question irrelevant). *Slack Techs., LLC*, 598 U.S. at 770. The Court's remand thus left both of those issues open. Because we "may consider and decide any matters left open by the mandate," we remain free to consider whether Pirani should be bound by his concessions. *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 256 (1895); *see United States v. Levy*, 416 F.3d 1273, 1280 (11th Cir. 2005) (noting that a Supreme Court remand does not prevent a court of appeals "from applying its prudential rules in a uniform and consistent manner").

Second, Pirani argues that his concessions are narrow enough that he can prevail even if he remains bound by them. Specifically, he argues that he can establish traceability through a statistical analysis. He asserts that the question is not whether he is able "to *prove* the registration status of *particular* shares," but rather "whether [he] can plausibly *allege* that he purchased at least *some* registered shares." He maintains that he can show traceability not by actually tracing the shares he purchased to those issued under the registration statement, but simply by relying on the statistical inference that given the number of shares he purchased and the fraction of shares on the exchange that were registered (about 42 percent), "the likelihood that none of the 30,000 shares was registered is infinitesimally small." Alternatively, he says, we should create a regime of burden-shifting under which Slack would have the burden to prove that Pirani's shares were *not* registered.

Pirani's statistical theory, like an allegation of direct traceability, is barred by Pirani's concessions. As the district court accurately summarized Pirani's position, "plaintiff did not and cannot allege that he purchased shares registered under and traceable to Slack's Registration Statement." Pirani's express acknowledgment that he cannot allege traceability means just that: He cannot allege traceability. That is equally true whether he attempts to do so directly or through statistical inference.

In any event, Pirani's statistical theory is both factually and legally flawed. As a factual matter, the theory rests on the unsupported assumption that Pirani's purchase of 30,000 shares involved 30,000 separate, statistically independent transactions—in which case the probability that all of the shares were unregistered would indeed be as infinitesimal as Pirani suggests. But if the purchase instead involved a single

transaction with a single seller, it is entirely possible that all of the shares were unregistered. Pirani has alleged nothing that would support the former assumption.

As a legal matter, the theory of statistical tracing is contrary to our precedent. In *In re Century Aluminum Co. Securities Litigation*, the defendant conducted a secondary offering in which it sold 24.5 million shares under a new registration statement, while 49 million previously issued shares were already trading on the exchange. 729 F.3d 1104, 1106 (9th Cir. 2013). We said that plaintiffs seeking to bring section 11 claims based on the new registration statement could establish traceability only "in one of two ways": They "could prove that they purchased their shares directly in the secondary offering itself," or they "could prove that their shares, although purchased in the aftermarket, can be traced back to the secondary offering," which "would require plaintiffs to trace the chain of title for their shares back to the secondary offering." *Id.* The plaintiffs could have made the same kind of statistical argument that Pirani is making here—namely, that one third of the shares trading on the exchange had been issued under the new registration statement, so any purchaser of a large number of shares would have had a very high probability of purchasing at least some registered shares (again, assuming the statistical independence of the purchases). But we implicitly rejected that theory by holding that plaintiffs who purchased shares on the exchange must "trace the chain of title for their shares back to the secondary offering." *Id.* Given that precedent, we agree with the Fifth Circuit, which has likewise rejected the concept of "statistical tracing" in the context of a section 11 claim. *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 496–97 (5th Cir. 2005).

We decline to adopt Pirani's burden-shifting theory because "[a]bsent some reason to believe that Congress intended otherwise, . . . we will conclude that the burden of persuasion lies where it usually falls, upon the party seeking relief." *Schaffer v. Weast*, 546 U.S. 49, 57–58 (2005); *see Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009); *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 92–93 (2008). As the Supreme Court has now made clear, traceability is an element of a section 11 claim. Nothing in the statute or in the Court's decision suggests that traceability should be an exception to the general rule that the plaintiff bears the burden of establishing every element of the claim.

Finally, Pirani argues that we should excuse his waiver. Assuming that we have discretion to relieve him of his waiver, we see no reason to do so here. To the contrary, excusing the waiver would unfairly prejudice Slack. As a result of the way Pirani chose to present his claim, Slack was forced to spend years—in the district court, this court, and the Supreme Court—litigating a statutory issue that was relevant only because of Pirani's concession that he could not establish traceability. We see no reason that Pirani should be allowed to start over with a new theory, making that expenditure of party (and judicial) resources pointless. It is far too late for Pirani to say he was only kidding.

Because Pirani expressly waived any allegation that any of the shares he purchased are directly traceable to the allegedly false and misleading registration statement, he has not stated a claim under section 11. And in light of his concessions, amendment of the complaint would be futile. *See In re Cloudera, Inc.*, 121 F.4th at 1189–90.

III

We now turn to whether Pirani stated a claim under section 12(a)(2). At the outset, we acknowledge the Supreme Court's caution that sections 11 and 12(a)(2) "contain distinct language that warrants careful consideration," and that they do not "necessarily travel together." *See Slack Techs., LLC*, 598 U.S. at 770 n.3. Nevertheless, we conclude that section 12(a)(2) also requires tracing a plaintiff's shares to an allegedly false or misleading prospectus.

We begin with the statutory text. *Rajaram v. Meta Platforms, Inc.*, 105 F.4th 1179, 1181 (9th Cir. 2024). Section 12(a)(2) states that "[a]ny person who . . . offers or sells a security . . . by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements . . . not misleading . . . shall be liable . . . to the person purchasing such security." 15 U.S.C. § 77*l*(a)(2). Like section 11, section 12(a)(2) uses the phrase "such security." In section 11, that phrase is ambiguous because "there is no clear referent . . . telling us what 'such security' means." *Slack Techs. LLC*, 598 U.S. at 766. But in section 12(a)(2), there is a clear referent: The phrase "such security" refers back to the "security" that was offered or sold "by means of a prospectus or oral communication." Thus, a plaintiff can establish a section 12(a)(2) claim only by showing that the purchased shares were offered or sold by such means.

The Supreme Court's decision in *Gustafson v. Alloyd Co.* explains the meaning of "by means of a prospectus," and it resolves the interpretive question presented here. 513 U.S. 561 (1995). There, the Court held that "the word 'prospectus' is a term of art referring to a document that

describes a public offering of securities by an issuer or controlling shareholder." *Id.* at 584. The Court rejected the argument that sections 11 or 12(a)(2) could give rise to "liabilities that are quite independent of the new substantive obligations the Act imposes," or, in other words, in circumstances in which the Act does not require a registration statement or prospectus. *Id.* at 572. Instead, the Court explained that the liability created by section 12(a)(2) is "linked to the new duties created by the Act," and in particular the duty to distribute a prospectus for registered shares. *Id.* Thus, the Court concluded that "the liability imposed by [section 12(a)(2)] cannot attach unless there is an obligation to distribute the prospectus in the first place." *Id.* at 571.

Under *Gustafson*, a security can be sold "by means of a prospectus" only if it is a registered security sold in a public offering, and liability under section 12(a)(2) can be based only on the sale of such a security. Thus, it follows that section 12(a)(2) imposes the same traceability requirement as section 11.

Pirani emphasizes that the text of section 12(a)(2) differs from that of section 11 in that it covers sales of securities by means of a prospectus "or oral communication," a phrase that he reads to extend coverage beyond the registration context. Setting aside the fact that this case does not involve any oral communications, the Court answered that argument in *Gustafson* when it recognized that "the phrase 'oral communication' is restricted to oral communications that relate to a prospectus." 513 U.S. at 567–68.

Similarly unhelpful is Pirani's observation that section 12(a)(2) expressly covers sales of securities that are exempt from the registration requirement under section 3, 15 U.S.C.

§ 77c. Section 3 exempts from coverage various classes of securities not at issue here, including insurance policies, securities issued by charitable organizations, and securities issued by savings and loan associations. *See id.* § 77c(a)(4), (5), (8). Because section 12(a)(2) applies notwithstanding that exemption, Pirani infers that Congress must also have intended to cover sales of securities that are exempt from the registration requirement under section 4, namely, "transactions by an issuer not involving any public offering," *id.* § 77d, such as the shares of Slack that were issued before the direct listing took place. Here, too, *Gustafson* provides the answer: The Court addressed precisely this point and explained that Congress's decision to refer to section 3, but not section 4, "cuts against, not in favor of," reading section 12(a)(2) to apply to section 4 transactions. 513 U.S. at 573.

Finally, Pirani argues that "anyone looking to value any of the shares"—whether registered or unregistered—"would have looked to the prospectus," so the prospectus must have been "a means for soliciting sale of those securities." The Second Circuit rejected a similar argument in *Yung v. Lee*, 432 F.3d 142 (2d Cir. 2005). There, a company had prepared a registration statement and prospectus for a public offering of securities, but the plaintiffs acquired their securities in a private offering that was exempt from the registration requirement. *See id.* at 144–45. The plaintiffs argued that the company's marketing of the securities had "relied heavily" on the prospectus, so the sale had been "by means of" the prospectus. *Id.* at 149. The Second Circuit rejected that argument, reasoning that the company had no obligation to distribute a prospectus in connection with a private offering, and "without such an obligation, a securities transaction cannot reasonably be deemed to have occurred 'by means of a prospectus.'" *Id.* We agree.

18                 PIRANI V. SLACK TECHNOLOGIES, INC.

Pirani's concessions as to traceability apply to his section 12(a)(2) claim just as they do to his section 11 claim, so we similarly conclude that he has not stated a claim under section 12(a)(2).

                    *        *        *

Because Pirani has not stated a claim under either section 11 or 12(a)(2), he cannot state a derivative claim under section 15. *See* 15 U.S.C. § 77o(a); *see also In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 886 (9th Cir. 2012). Accordingly, we reverse the district court's partial denial of the motion to dismiss and remand with instructions to dismiss the complaint in full and with prejudice.

**REVERSED and REMANDED.**