JAMES M. JOHNSON (Cal. Bar No. 229811)
JOHNSON TRIAL LAW, LLC
100 Wilshire Boulevard
Suite 700
Santa Monica, California 90401
Telephone: (424) 272-6680
E-mail: james@johnsontrial.com

Attorneys for Defendant
BF BORGERS CPA PC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| IN RE GOLDEN HEAVEN GROUP HOLDINGS LTD. SECURITIES LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>*ALL ACTIONS* | Case No. 2:23-cv-10619-HDV-SK<br><br>CLASS ACTION<br><br>**REPLY BRIEF IN SUPPORT OF DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS PLAINTIFF'S SECTION 11 CAUSE OF ACTION (15 U.S.C. § 77k)**<br><br>Hearing Date: March 13, 2025<br>Time: 10:00 a.m.<br>Judicial Officer: Hon. Hernán D. Vera |

- 1 -
**REPLY BRIEF IN SUPPORT OF DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS SECTION 11 CAUSE OF ACTION**

# TABLE OF CONTENTS

I.    INTRODUCTION…………………………………………………..…..5

II.   ARGUMENT AND CITATION TO AUTHORITY…………………………..6

      A.    As a preliminary matter, Plaintiff erroneously relies
            on pre-*Iqbal/Twombly* authorities with relaxed pleading
            standards that aren't applicable to his Section 11 claim …….………...…6

      B.    Plaintiff fails to adequately allege standing……………………………..7

            1.    The Ninth Circuit holds that direct tracing is required,
                  even if that is an impossible task in cases involving a
                  mixed pool of registered and unregistered shares………………...8

            2.    Even if *Pirani II* is not facially dispositive,
                  Plaintiff fails to plausibly allege any ability to
                  directly trace his shares to those issued in
                  April 2023 under Golden Heaven's prospectus…………………11

      C.    Plaintiff fails to allege sufficient facts to state a plausible
            Section 11 claim against BF Borgers………………………………..13

            1.    Plaintiff doesn't deny the relative paucity of
                  specific factual allegations against BF Borgers
                  in the amended complaint…………………………………………13

            2.    A negligence standard, not a strict liability standard,
                  applies to Plaintiff's Section 11 claim against
                  BF Borgers, and Plaintiff fails to allege any negligent acts……..14

            3.    The crux of Plaintiff's Section 11 claim—that
                  Golden Heaven inflated park attendance numbers
                  and, therefore, its revenues—is insufficiently
                  plausible to survive a motion to dismiss………………………...16

            4.    Golden Heaven's other alleged false statements
                  about the number of park employees do not create
                  the inference that BF Borgers should have been
                  wary of Golden Heaven's financial condition…………………..17

III.  CONCLUSION…………………………………………………………18

CERTIFICATE OF COMPLIANCE (L.R. 11-6.2)………………………………19

**REPLY BRIEF IN SUPPORT OF DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS SECTION 11 CAUSE OF ACTION**

# **TABLE OF AUTHORITIES**

## **CASES**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)……………………………………….……*passim*

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)……………………………………….……*passim*

*Ernst & Ernst v. Hochfelder,*
425 U.S. 185 (1976)……………………………………………….14,15

*Gilligan v. Jamco Dev. Corp.,*
108 F.3d 246 (9th Cir. 1997)………………………………………...6

*Goldstein v. MCI WorldCom,*
340 F.3d 238, 249 (5th Cir. 2003)…………………………………15,n5

*Herman & McLean v. Huddleston,*
459 U.S. 375 (1983)…………………………………………………6

*Howse v. Chiquita Canyon, LLC,*
2024 U.S. Dist. LEXIS 210396 (C.D. Cal. Nov. 19, 2024)……………………7

*In re Century Aluminum Co. Sec. Litig.,*
729 F.3d 1104 (9th Cir. 2013)…………………………………...……7,11,17

*In re DDi Corp. Sec. Litig.,*
2005 U.S. Dist. LEXIS 28216 (C.D. Cal. July 20, 2005)………………………...6

*In re Immune Response Sec. Litig.,*
375 F. Supp. 2d 983 (S.D. Cal. 2005)………………………………...……6,12

*In re Royal Ahold N.V. Sec. & ERISA Litig.,*
351 F. Supp. 2d 401 (D. Md. 2004)……………………………..…...11,n4

*In re Mun. Mortg. & Equity, LLC Sec. & Derivative Lit.,*
876 F. Supp. 2d 616 (D. Md. 2012)…………………………………….…12

*In re SeeBeyond Techs. Corp. Sec. Litig.,*
266 F. Supp. 2d 1150 (C.D. Cal. 2003)………………………………………12

*In re Ubiquiti Networks, Inc. Sec. Litig.,*
33 F. Supp. 3d 1107 (N.D. Cal. 2014)………………………………………...12

*In re Wash. Mut. Inc. Sec. Derivative & ERISA Litig.,*
694 F. Supp. 2d 1192 (W.D. Wash. 2009)………………………………..15,n5

*Monroe v. Hughes,*
31 F.3d 772 (9th Cir. 1994)…………………………………………..…14,18

*Moss v. U.S. Sec. Serv.,*
572 F.3d 962 (9th Cir. 2009)..…………………………………………...7

**REPLY BRIEF IN SUPPORT OF DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS SECTION 11 CAUSE OF ACTION**

*Pirani v. Slack Techs., LLC,*
    __ F.4th __ (9th Cir. Feb. 10, 2025)……………………………………….*passim*

*Rieckborn v. Jefferies LLC,*
    81 F. Supp. 3d 902 (N.D. Cal. 2015)……………………………………….15

*Slack Techs. v. Pirani,*
    598 U.S. 759 (2023)……………………………………………………….7,9

*Whitaker v. Tesla Motors, Inc.,*
    985 F.3d 1173 (9th Cir. 2021)……………………………………………..6,7

**REPLY BRIEF IN SUPPORT OF DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS SECTION 11 CAUSE OF ACTION**

## REPLY BRIEF-MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Lead Plaintiff Rahul Patanage is unapologetic about the lack of specific factual allegations against BF Borgers in his amended complaint. Plaintiff says details don't matter; because he alleges that Golden Heaven's prospectus is false, and because he alleges that BF Borgers certified the prospectus's financial statements, then BF Borgers violated Section 11 *ipso facto* and no other supporting details are necessary.

That's not the law. That's not even the theory of Section 11 liability articulated in the amended complaint (there isn't one, in fact). But the lack of plausible factual allegations, and Plaintiff's overreliance on pre-*Iqbal*/*Twombly* pleading standards, aren't the only things that doom Plaintiff's Section 11 claim. Earlier this month, in *Pirani v. Slack Techs., LLC*, __ F.4th __ (9th Cir. Feb. 10, 2025), the Ninth Circuit all but eliminated Section 11 liability in cases like ours— where a plaintiff purchases securities from a mixed pool of registered and unregistered securities—because of the sheer impossibility of tracing the shares back to an allegedly tainted registration statement. Plaintiff has not, and cannot, provide a methodology allowing him to perform a reverse-chronology, direct chain-of-title tracing of his shares back to those sold under Golden Heaven's April 2023 IPO (and not the 50,000,000 unregistered shares already on the market at that time). For the foregoing reasons, and those previously articulated in BF Borgers' motion to dismiss, the Court should grant the motion and dismiss the Section 11 claim.

\

**REPLY BRIEF IN SUPPORT OF DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS SECTION 11 CAUSE OF ACTION**

## II. ARGUMENT AND CITATION TO AUTHORITY[1]

### A. As a preliminary matter, Plaintiff erroneously relies on pre-*Iqbal*/*Twombly* authorities with relaxed pleading standards that aren't applicable to his Section 11 claim

A running theme in Plaintiff's opposition brief is his insistence that pleading standards applicable to his Section 11 claim are relaxed, minimal, and satisfied by the conclusory allegations in his amended complaint. *See*, *e.g.*, Doc. 106 at 12[2] ("plaintiffs need only plead that . . .") (citing *Herman & McLean v. Huddleston*, 459 U.S. 375, 382 (1983)); 13 (plaintiffs "need only show a material misstatement or omission to establish [a] prima facie case," which is "a relatively minimal burden") (citing *Huddleston*); ("Section 11 requires only a short and plain statement of the claim under Rule 8(a), showing that the pleader is entitled to relief") (citing *In re DDi Corp. Sec. Litig.*, 2005 U.S. Dist. LEXIS 28216 at *43 (C.D. Cal. July 20, 2005)); ("there is a powerful presumption against rejecting pleadings for failure to state a claim") (quoting *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997)); 20 (allegations that plaintiffs purchased shares pursuant to defective registration statement "sufficient grounds for a presumption of standing") (quoting *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1039 (S.D. Cal. 2005)).

The problem, however, is that these authorities all predate (and do not address) the heightened federal pleading standards established by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See, e.g.*, *Whitaker v. Tesla Motors, Inc*. 985 F.3d 1173, 1179 (9th Cir. 2021) ("As a doctrinal matter,

---

[1] In his opposition brief, Plaintiff repeatedly vouches for the strength of his factual allegations by stating BF Borgers didn't expressly deny those allegations in his motion to dismiss. *See*, *e.g.*, Doc. 106 at 1 ("Borgers CPA does not [] dispute the falsity of these representations") ("Tellingly, Borgers CPA does not even attempt to argue otherwise"). As Plaintiff and the Court well know, however, Plaintiff's factual allegations are considered true at this stage, and it's unnecessary for BF Borgers to address the truth or falsity of those allegations in his motion. BF Borgers will address the accuracy of Plaintiff's alleged facts at the appropriate time.

[2] All page number references are to the ECF page number.

**REPLY BRIEF IN SUPPORT OF DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS SECTION 11 CAUSE OF ACTION**

there is little question that *Iqbal* and *Twombly* mark a change in pleading requirements") (quoting Alexander A. Reinert, Measuring the Impact of Plausibility Pleading, 101 Va. L. Rev. 2117, 2125 (2015)). Practically speaking, *Iqbal*/*Twombly* ended the "notice" pleading practice of merely reciting the elements of a cause of action and conclusorily asserting that those elements were satisfied; now, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Sec. Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The heightened *Iqbal*/*Twombly* pleading standard applies to Section 11 claims. *Pirani II,* __ F.4th __ at 9.

Accordingly, to the extent Plaintiff argues that older, more relaxed pleading standards apply to its Section 11 claims, Plaintiff is incorrect. *See*, *e.g.*, *Howse v. Chiquita Canyon, LLC*, 2024 U.S. Dist. LEXIS 210396 at *128 (C.D. Cal. Nov. 19, 2024) ("The cases cited to the contrary are pre-*Iqbal*/*Twombly* (or rely on standards other than *Iqbal*/*Twombly*) and therefore are inapposite[.]") As detailed more fully below, Plaintiff fails to satisfy the heightened *Iqbal*/*Twombly* standard both with respect to his standing allegations and on the merits of his Section 11 claim against BF Borgers.

### B. Plaintiff fails to adequately allege standing

"To bring a claim under [Section 11 of the Securities Act], the securities held by the plaintiff must be traceable to the particular registration statement alleged to be false or misleading." *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 768 (2023). Where, like here, outstanding shares existed in the market prior to an offering backed by an allegedly false registration statement, the "[plaintiff] needs to prove that the shares [he] purchased came from the pool of shares issued in the secondary offering, rather than from the pool of previously issued shares." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1106 (9th Cir. 2013).

**REPLY BRIEF IN SUPPORT OF DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS SECTION 11 CAUSE OF ACTION**

In his amended complaint, Plaintiff merely alleges that he purchased shares "pursuant *and/or* traceable to" the allegedly false registration statement at issue. Doc. 63 at ¶¶ 342, 354. Plaintiff vehemently argues that this bare-bones, fact-free, conclusory statement is sufficient to confer standing. Doc. 106 at 20. But Plaintiff is wrong for at least two reasons. First, the Slack Technologies securities class action saga, culminating with the Ninth Circuit's recent decision in *Pirani II*, confirms that a plaintiff must establish *through direct tracing* that his shares were those sold under a tainted registration statement—something Plaintiff does not plausibly allege here and, far more importantly, is something *impossible* for Plaintiff to allege under our facts. Second, even if *Pirani II*'s reasoning is not readily dispositive, Plaintiff's amended complaint fails to adequately allege standing under *Iqbal*/*Twombly* principles.

      1.    <u>The Ninth Circuit holds that direct tracing is required, even if that is an impossible task in cases involving a mixed pool of registered and unregistered shares</u>

*Pirani II* confirms a harsh, if obvious, reality: a plaintiff who purchases stock from a market pool consisting of *both* registered and unregistered shares will never be able to directly (and plausibly) trace his shares back to a tainted registration statement. As a result, Plaintiff's attempts to demonstrate standing here are doomed to failure. But to appreciate the untenability of Plaintiff's position after *Pirani II*, some factual background is necessary.

The Pirani saga started with the public sale of Slack stock through a direct listing—that is, a listing consisting of previously-issued shares. *Pirani II* at 7. On the first day of the offering, 118 million registered shares were available for purchase (i.e., shares sold under an allegedly misleading registration statement)—*but so were 165 million unregistered shares*. *Id*. On the day of the direct offering, Pirani purchased 30,000 shares from this combined pool of 283 million registered and unregistered shares. *Id*.

**REPLY BRIEF IN SUPPORT OF DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS SECTION 11 CAUSE OF ACTION**

When Pirani later asserted a Section 11 claim, he alleged exactly what Plaintiff does here: that he acquired Slack stock "pursuant and/or traceable to the offering materials." *Id.* at 9. But later, when facing a motion to dismiss based on lack of standing, Pirani conceded that "the concept of 'tracing' a share of stock—i.e., establishing a chain of title for a particular share back to the share's original owner—is a concept that no longer exists in today's market and is not possible." *Id.* at 10. Both the district court and the Ninth Circuit accepted that (valid) concession and held that "interpreting Section 11 to apply only to registered shares in a direct listing context would essentially eliminate Section 11 liability for misleading or false statements made in a registration statement in a direct listing." *Id.* Later, when the Supreme Court took up the issue, Pirani again conceded that "it was impossible to trace his shares to a registration statement." *Id.*

The Supreme Court disagreed with the lower courts, holding (as noted above) that "[t]o bring a claim under [Section 11 of the Securities Act], the securities held by the plaintiff must be traceable to the particular registration statement alleged to be false or misleading." *Slack Techs., LLC*, 598 U.S. at 768. On remand, the Ninth Circuit held that, because Plaintiff conceded he could not directly trace his shares to the problematic registration statement, he did not have standing to assert a Section 11 claim. *Pirani II* at 14.

Of course, Pirani tried to escape his previous concession by arguing that, among other things, he could trace his shares back to the registration statement through statistical analysis. *Id.* at 12. But the Ninth Circuit rejected the "statistical tracing" approach because it necessarily relied on the assumption that Pirani's purchase of 30,000 Slack shares involved 30,000 separate, statistically independent transactions. *Id.* The Ninth Circuit reasoned it was possible that all 30,000 shares were purchased in a single transaction from a single seller, and that all shares were

**REPLY BRIEF IN SUPPORT OF DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS SECTION 11 CAUSE OF ACTION**

unregistered; importantly, the Ninth Circuit noted that "Pirani has alleged nothing that would support" his claim that each share was sold independently. *Id*. at 13.

So why is *Pirani II* a complete bar to Plaintiff's claims here? Plaintiff argues *Pirani II* is distinguishable on an obvious point: while Pirani conceded he could not trace his shares back to the registration statement, Plaintiff makes no such concession. *See*, *e.g.*, Doc. 108 at 3 ("Plaintiff makes no such concessions; he instead argues and alleges that he bought his shares pursuant to and traceable to the only registration statement.")[3] But Plaintiff misses the far larger point: Pirani was forced to make those concessions because it's impossible to perform a direct chain-of-title tracing of shares where the market pool exists of registered and unregistered shares. Pirani purchased his shares from the market months after Golden Heaven's April 2023 IPO. *See* Doc. 34-3 (certification of Rahul Patanage showing purchase of Golden Heaven shares on December 7, 2023 at $17 to $22 dollars per share). Given modern electronically-traded securities markets, there is simply no way for Plaintiff to perform a reverse-chronological, direct chain-of-title analysis to show that his shares came from Golden Heaven's April 2023 IPO (tainted by the allegedly false prospectus and financial statements) and not the 50,000,000 shares already on the market at the time of the IPO and which were *not* sold under that prospectus. Not only does Plaintiff fail to allege a plausible direct tracing of his shares back to the Golden Heaven IPO, but he also fails to propose a methodology for doing so if given leave to amend his complaint again. This is likely because no such methodology currently exists.

---

[3] This assertion is not in Plaintiff's opposition brief (since that brief pre-dated the release of the *Pirani II* opinion); rather, Plaintiff filed a "response to Defendant Golden Heaven HDV-SK's notice of supplemental authority" purporting to distinguish *Pirani II* when Golden Heaven brought the new case to the Court's attention.

**REPLY BRIEF IN SUPPORT OF DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS SECTION 11 CAUSE OF ACTION**

2.    <u>Even in *Pirani II* is not facially dispositive, Plaintiff fails to plausibly allege any ability to directly trace his shares to those issued in April 2023 under Golden Heaven's prospectus</u>

Given Pirani's concessions, the *Pirani II* court did not analyze whether Pirani's bare-bones standing allegation that he acquired Slack stock "pursuant and/or traceable to the offering materials" was sufficient under applicable *Iqbal*/*Twombly* pleading standards. *Pirani II* at 9 (if not for Pirani's concessions, "we would have to decide whether his allegation was sufficient to make the conclusion of traceability a plausible one under [*Iqbal*/*Twombly*.]") But like Pirani's standing allegation, Plaintiff's amended complaint doesn't set forth plausible facts showing that he can directly trace his shares back to the Golden Heaven prospectus (as opposed to the 50,000,000 pre-IPO shares on the market). *See In re Century Aluminum*, 729 F.3d at 1108-09 (determining plaintiffs' standing allegations were insufficiently plausible under *Iqbal*/*Twombly* because, while it was *possible* their shares came from a registered offering, they didn't allege facts "[excluding] the possibility that their shares came from the pool of previously issued shares.")

Plaintiff's authorities are similarly unavailing. One of them, *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 401, 403-04 (D. Md. 2004), expressly dismissed plaintiff's Section 11 claim for failure to plausibly allege standing in a case involving a mixed pool of registered and unregistered securities. *Id*. at 403, 406 ("Considering the issue of traceability, however, plaintiffs have not adequately stated a claim under § 11 . . . . Therefore, the defendants' motions to dismiss the plaintiffs' § 11 claim will be granted.")[4] The others either predate *Iqbal*/ *Twombly*, don't involve a

---

[4] Plaintiff's misreading of *Royal Ahold* shouldn't go unaddressed. Plaintiff says *Royal Ahold* contains the statement "Lead Plaintiff . . . purchased . . . common stock . . . pursuant to the registration and prospectus" [and that was] "sufficient to state a § 11 claim." Doc. 106 at 20. There's a reason Plaintiff decided to use all those ellipses. The *Royal Ahold* court said that "*Typically*, such a straightforward averment would be sufficient to state a § 11 claim." *Id*. at 404 (emphasis added). But then the court devoted almost three full pages to explaining why the standing allegation was deficient because, among other reasons, there was a mixed pool of registered and unregistered securities. *Id*. at 404-407.

**REPLY BRIEF IN SUPPORT OF DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS SECTION 11 CAUSE OF ACTION**

mixed pool of registered and unregistered shares, or they involve specifically-pled facts making their standing allegations plausible under *Iqbal*/*Twombly*:

- In *In re Mun. Mortg. & Equity, LLC Sec. & Derivative Lit.*, 876 F. Supp. 2d 616 (D. Md. 2012), the plaintiff specifically alleged: (a) he purchased shares the same day that a secondary public offering (an "SPO") was announced (and received a purchase confirmation stating that the prospectus was being sent under separate cover; and: (b) he received his shares on the same date the SPO closed and the date the defendant announced its shares would be available for distribution. *Id*. at 657. The district court held that these specifically pled facts about the timing of plaintiff's purchases made his allegation that he bought shares pursuant to the SPO registration statement plausible. *Id*. at 658.

- *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983 (S.D. Cal. 2005), was issued before *Iqbal*/*Twombly* and does not analyze the plausibility of plaintiff's standing allegations under the heightened pleading standard. *Id*. at 1039.

- Similarly, *In re SeeBeyond Techs. Corp. Sec. Litig.*, 266 F. Supp. 2d 1150 (C.D. Cal. 2003) was issued before *Iqbal*/*Twombly* and likewise does not analyze the plausibility of plaintiff's standing allegations under the heightened pleading standard. *Id* at 1171. But even under the pre-*Iqbal*/*Twombly* standard, the district court "acknowledges the defendants' argument that it may be difficult or impossible to trace the stock purchased by the plaintiff." *Id*.

- Finally, in *In re Ubiquiti Networks, Inc. Sec. Litig*., 33 F. Supp. 3d 1107 (N.D. Cal. 2014), the district court found plaintiffs' standing allegations plausible where 87,00,000 shares were registered under the tainted registration statement and only 26,000 shares were not. *Id*. at 1119. This is a far cry from our case, where 50,000,000 shares were outstanding prior to Golden Heaven's IPO.

- 12 -

**REPLY BRIEF IN SUPPORT OF DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS SECTION 11 CAUSE OF ACTION**

**C.** **Plaintiff fails to allege sufficient facts to state a plausible claim Section 11 claim against BF Borgers**

Plaintiff's theory of Section 11 liability against BF Borgers essentially goes like this: (a) Golden Heaven lied about attendance at its various parks; so, as a result (b) its revenues and profits were inflated; (c) BF Borgers signed an audit report certifying those revenues and profits; therefore (d) BF Borgers violated Section 11. And Plaintiff suggests that, because his theory of liability is so straightforward, he doesn't need to assert any specific, meaningful factual allegations against BF Borgers at all. Plaintiff is wrong for many reasons.

      1.    <u>Plaintiff does not deny the relative paucity of specific factual allegations against BF Borgers in the amended complaint</u>

Plaintiff doesn't dispute that his lengthy amended complaint in this action contains only a scant three references to BF Borgers:

- In paragraph 209, Plaintiff alleges that BF Borgers represented in Golden Heaven's prospectus that: (a) it performed procedures to assess the risks of material misstatements in Golden Heaven's financial statements; (b) it evaluated the accounting principles used by Golden Heaven and evaluated the overall presentation of its financial statements; and (c) Golden Heaven's financial statements fairly present the company's financial position in conformance with generally accepted accounting principles ("GAAP"). Plaintiff doesn't allege that any of these representations were false or misleading, and he does not allege that BF Borgers knew or should have known that Golden Heaven's financial information was false.

- In paragraphs 235 and 236, Plaintiff quotes from an SEC press release announcing its own May 2024 investigation into BF Borgers' alleged failures to comply with Public Company Accounting Oversight Board ("PCAOB") standards in its audits and reviews. But Plaintiff doesn't allege that BF

**REPLY BRIEF IN SUPPORT OF DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS SECTION 11 CAUSE OF ACTION**

Borgers' work on the Golden Heaven IPO was part of the investigation or that Borgers violated PCAOB standards when performing that work.

- In paragraphs 352 and 353, Plaintiff conclusorily alleges that *all defendants*, including BF Borgers, failed to exercise reasonable care to ensure that Golden Heaven's registration materials did not contain inaccurate misrepresentations or material omissions of fact. Plaintiff doesn't provide any factual support for this conclusion, including exactly how BF Borgers failed to exercise reasonable care.

Recognizing the relative paucity of its factual allegations, Plaintiff argues in opposition to the motion to dismiss that its amended complaint should be broadly read to allege: (a) Golden Heaven's consolidated financial statements were false; (b) BF Borgers certified those false financial statements; so (c) BF Borgers violated Section 11. Doc. 106 at 14-15. Even if this skeletal liability framework was sufficient to survive a motion to dismiss (and it is not), it isn't actually articulated in the amended complaint. As written, the minimal factual allegations against BF Borgers fail to state a cognizable Section 11 claim, and Plaintiff's opposition brief shouldn't be read to tease out additional liability theories not specifically set forth in his amended complaint.

> 2.    <u>A negligence standard, not a strict liability standard, applies to Plaintiff's Section 11 claim against BF Borgers, and Plaintiff fails to allege any negligent acts</u>

As Plaintiff acknowledges, Section 11 claims against accountants like BF Borgers are analyzed under a negligence standard rather than a strict liability standard. *Monroe v. Hughes*, 31 F.3d 772, 774 (9th Cir. 1994) ("Although *issuers* are strictly held liable under § 11 for damages resulting from misrepresentations in a registration statement, an accountant has a due diligence defense; § *11 therefore imposes a negligence standard for an accountant's liability*") (<u>citing</u> *Ernst & Ernst v.*

- 14 -

**REPLY BRIEF IN SUPPORT OF DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS SECTION 11 CAUSE OF ACTION**

*Hochfelder*, 425 U.S. 185, 208 (1976)) (emphasis added); *Rieckborn v. Jefferies LLC*, 81 F. Supp. 3d 902, 914 (N.D. Cal. 2015) (same).

Here, Plaintiff fails to provide *any* factual, non-conclusory allegations that BF Borgers acted negligently in connection with its audit of Golden Heaven's financial information, let alone anything that meets the *Iqbal/Twombly* pleadings standard. Plaintiff points to a single paragraph in his amended complaint to argue that negligence is adequately pled here:

> The Securities Act Defendants were responsible for the contents and dissemination of the Registration Statement. None of the Securities Act Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements made in the Registration Statement were true and without omissions of any material facts and were not inaccurate. By reasons of the conduct alleged herein, each Defendant violated and/or controlled a person who violated Section 11 of the Securities Act.

Doc. 63 at ¶ 353. This is about as threadbare and conclusory as allegations get. Not only is this paragraph non-specific to BF Borgers, but it fails to answer the most basic of questions: How was BF Borgers negligent? Did it fail to adequately scrutinize the financial information provided by Golden Heaven? Did it ignore warning signs of fraud or false information? Did it fail to follow GAAP or PCAOB standards?[5] Did it fail to perform an audit at all?[6] The amended complaint doesn't say. And while paragraph 353 attempts to incorporate by reference "the conduct described herein" as

[5] Plaintiff spends a not-insubstantial amount of time reminding the Court that that "financial statements that are not prepared in conformity with GAAP are presumed to be misleading and inaccurate. Doc. 106 at 15 (quoting *Goldstein v. MCI WorldCom*, 340 F.3d 238, 249 (5th Cir. 2003)), 18 (quoting *In re Wash. Mut. Inc. Sec. Derivative & ERISA Litig.*, 694 F. Supp. 2d 1192, 1223-24 (W.D. Wash. 2009); fn. 3 (string citing similar cases). But Plaintiff *does not* allege that BF Borgers violated GAAP when performing its audit of Golden Heaven's financial information.

[6] Plaintiff certainly tries to suggest—albeit obliquely—that this is the case. Thus the allegations about the SEC's investigation of BF Borgers in Plaintiff's complaint [Doc. 63 at ¶¶ 235-236] and his emphasis of those allegations in his opposition brief [Doc. 106 at 11-12.] But, as noted above, Plaintiff does not allege that BF Borgers: (a) failed to comply with PCAOB standards in its audit of Golden Heaven's financial statements; or (b) was investigated by the SEC in connection with its audit of those financial statements.

- 15 -

**REPLY BRIEF IN SUPPORT OF DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS SECTION 11 CAUSE OF ACTION**

evidence of BF Borgers' negligence, the amended complaint doesn't contain any other allegations of any negligent, wrongful, or improper conduct by BF Borgers in connection with its audit of Golden Heaven's financial statements. Because Plaintiff fails to plead any specific facts supporting a plausible negligence theory against BF Borgers, its Section 11 allegations are insufficient.

3. <u>The crux of Plaintiff's Section 11 claim—that Golden Heaven inflated park attendance numbers and, therefore, its revenues—is insufficiently plausible to survive a motion to dismiss</u>

Golden Heaven's alleged lies about park attendance form the crux of Plaintiff's Section 11 claim. Plaintiff devotes a significant amount of its amended complaint explaining, via basic mathematical calculations, why it believes Golden Heaven's Park attendance is overstated: "many of the cited valuation figures of attendance, when divided by 365 days per year, *exceed the daily maximum park capacity*."[7] Doc. 63 at ¶ 227 (emphasis in original); *see also* ¶¶ 245-255 (calculating daily park attendance). Plaintiff reasons that, because the calculated per-day park attendance exceeds "full park capacity," then Golden Heaven is lying about attendance and overstating its revenue and profits. And, because BF Borgers certified the overstated revenue and profit numbers in Golden Heaven's financial statements, BF Borgers violated Section 11. Doc. 106 at 16 (arguing that "[BF Borgers] failed to do any diligence when assessing key metrics of Golden Heaven's business.")

But there's an eminently plausible explanation for why Golden Heaven's daily attendance figures exceed "full park capacity," one that's obvious to anyone who's ever been to Disneyland or a movie theater: *people enter and leave throughout the day*. Consider the easy example of a single-screen movie theater. It may have only 200 seats and, by extension, a maximum capacity of 200 movie viewers. But if there are five shows daily, and it's a sell-out movie, then 1,000 people may see the movie

---

[7] Note that the prospectus does not actually contain a figure for "daily maximum park capacity." As noted elsewhere in the amended complaint, the prospectus provides data for "full park capacity" for each park. Doc. 63 at ¶ 220.

**REPLY BRIEF IN SUPPORT OF DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS SECTION 11 CAUSE OF ACTION**

in one day. That's five times "full theater capacity." Similarly, we've all left Disneyland or Magic Mountain tired at dusk only to see a line of excited people ready to ride roller coasters at night. Amusement park attendance is fluid throughout the day; if one were to count the total number of people entering a park or a movie theater in a day, that number may plausibly be greater than the capacity of the park.

While Plaintiff's thesis—that simple math shows Golden Heaven lied about park attendance (and thus revenues and profits)—is *possible*, it is not *plausible*. To render his allegations of inflated park attendance plausible within the meaning of *Iqbal*/*Twombly*, Plaintiff must allege facts that exclude the possibility that the total daily attendance of a given park will exceed the capacity of the park because of departures and new arrivals throughout the day. *In re Century Aluminum Co. Sec. Litig.*, 799 F.3d 1104, 1108 (9th Cir. 2013) (to establish plausibility, "something more is needed, such as facts tending to exclude the possibility that the other explanation is true") (<u>citing</u> *Twombly*, 550 U.S. at 554). Because Plaintiff fails to do so here, his theory that park attendance was overstated, profits and revenues were overstated and false, and that BF Borgers certified false financial statements fails to satisfy *Iqbal*/*Twombly* pleading requirements.

4.    <u>Golden Heaven's other alleged false statements about the number of park employees do not create the inference that BF Borgers should have been wary of Golden Heaven's financial condition</u>

Plaintiff argues that misstatements in Golden Heaven's prospectus relating to the number of park employees "further support the inference that [BF Borgers] failed to do any diligence when assessing key metrics of Golden Heaven's business." Doc. 106 at 16; *see also* Doc. 68 at ¶¶ 261-265 (alleging that the prospectus misrepresented the number of management employees at each park and the ability of management to maintain park rides and improve park business operations). While the prospectus certainly discusses the number of park employees, Plaintiff doesn't allege that this information is in the financial statements audited and certified by BF Borgers. Nor

**REPLY BRIEF IN SUPPORT OF DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS SECTION 11 CAUSE OF ACTION**

does Plaintiff allege that BF Borgers reviewed (or should have reviewed) data regarding the number of park employees as part of his audit. Accordingly, BF Borgers is not liable for alleged misrepresentations about employee numbers and they should not be used to support an inference that BF Borgers should have been wary about Golden Heaven's park attendance numbers and other financial data. *Monroe*, 31 F.3d at 774 (accountant faces Section 11 liability only for portions of registration statement prepared or certified by the accountant).

## III.    CONCLUSION

The Court should dismiss Plaintiff's Section 11 claim against BF Borgers without leave to amend based on lack of standing. If the Court grants leave to amend on the issue of standing, it should specifically require Plaintiff to articulate an achievable, non-hypothetical methodology by which he can trace his shares back to the April 2023 Golden Heaven IPO. The Court should likewise dismiss Plaintiff's Section 11 claim on the merits.

Respectfully submitted on February 27, 2025.


/s/ James M. Johnson
James M. Johnson
james@johnsontrial.com

*Attorneys for Defendant*
*BF Borgers CPA PC*

- 18 -

**REPLY BRIEF IN SUPPORT OF DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS SECTION 11 CAUSE OF ACTION**

## CERTIFICATE OF COMPLIANCE

The undersigned counsel for Defendant BF Borgers CPA PC certifies that this brief contains 4,491 words, which complies with the word limit of L.R. 11-6.1.

Respectfully submitted on February 27, 2025.


/s/ James M. Johnson
James M. Johnson
james@johnsontrial.com

*Attorneys for Defendant*
*BF Borgers CPA PC*

- 19 -

**REPLY BRIEF IN SUPPORT OF DEFENDANT BF BORGERS CPA PC'S MOTION TO DISMISS SECTION 11 CAUSE OF ACTION**